956 F.2d 869
 37 Cont.Cas.Fed. (CCH) P 76,271
 HAMPTON TREE FARMS, INC., Plaintiff-Appellee,
v.
Clayton YEUTTER, Secretary of the United States Department
of Agriculture; F. Dale Robertson, Chief of the United
States Forest Service; John F. Butruille, Regional Forester
for Region VI of the United States Forest Service; United
States of America, Defendants-Appellants.
SUNTIP CO., an Oregon partnership, Plaintiff-Appellee,
v.
Clayton YEUTTER, Secretary of the United States Department
of Agriculture; F. Dale Robertson, Chief, Forest Service,
United States Department of Agriculture; John F. Butruille,
Regional Forester for Region 6, Forest Service, United
States Department of Agriculture; United States of America,
Defendants-Appellants.
 Nos. 90-35443, 90-35509.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 9, 1991.
Memorandum Filed Dec. 2, 1991.
Order and Opinion Filed Feb. 14, 1992.
As Amended Feb. 14, 1992.
 
 Dirk D. Snel, Environment & Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., for defendants-appellants.
 John Bledsoe, Lane, Powell, Spears, Lubersky, Portland, Or., for plaintiffs-appellees.
 Appeal from the United States District Court for the District of Oregon.
 Before GOODWIN, ALARCON and HALL, Circuit Judges.
 ORDER
 The appellants' request for publication is GRANTED. The memorandum disposition filed December 2, 1991, is redesignated as an authored opinion by Judge Goodwin.
 OPINION
 GOODWIN, Circuit Judge:
 
 
 1
 The Forest Service appeals summary judgment for two timber companies seeking extensions of defaulted contracts to purchase Forest Service timber. The Forest Service had denied their applications as untimely. We reverse.
 
 
 2
 These actions arise out of difficulties experienced by appellees Hampton Tree Farms, Inc. ("Hampton") and Suntip Co. ("Suntip") in fulfilling their contracts with the Forest Service to purchase timber. In the late 1970s, purchasers bid up the price of government timber for future cutting. Many, including Hampton and Suntip, entered into purchasing contracts which locked them into high prices. After the economic downturn of the early 1980s, many of these companies faced substantial losses in meeting their contractual obligations.
 
 
 3
 In response to Congressional pressure, the Forest Service adopted the "Multi-Sale Extension Policy" (MSEP). The MSEP granted those timber companies which chose to participate a five-year extension for completing their contracts. In return, the companies forfeited eligibility for any additional contract extensions and accepted certain modifications of their contracts. The final version of the MSEP was published in the Federal Register on December 7, 1983. It required the companies wishing to participate in the program to submit a plan to the Forest Service by February 15, 1984. 48 Fed.Reg. 54,812, 54814 (1983).
 
 
 4
 Hampton and Suntip chose not to submit MSEP plans in accordance with the February 15, 1984 deadline. Instead, they chose to rely on a district court injunction then on appeal. North Side Lumber Co. v. Block, No. 83-490, slip op. (D.Or. Feb. 15, 1984). In North Side, the plaintiff class of timber companies was seeking a judicial remedy for the economic problem addressed by the MSEP. The timber companies claimed that it had become commercially impracticable to perform their contracts. They requested that the district court allow them to rescind the contracts and enjoin the Forest Service from enforcing them.
 
 
 5
 On February 15, 1984, the North Side district court issued a preliminary injunction which ordered the Forest Service not to enforce its contracts with members of the plaintiff class. It also enjoined enforcement of the February 15, 1984 deadline for submitting MSEP plans. The injunction required the Forest Service to allow class members 30 days following dissolution of the preliminary injunction "to submit and have considered by the Forest Service" MSEP plans. North Side, slip op. at 2.
 
 
 6
 On February 20, 1985, this court reversed that injunction, holding that the district court lacked jurisdiction over the plaintiffs' contract claims. North Side Lumber Co. v. Block, 753 F.2d 1482 (9th Cir.1985). Due to delays related to petitions for rehearing and for certiorari, this court's mandate in North Side did not issue until November 28, 1985. The district court received the mandate on December 2, 1985. The parties agree that the injunction was dissolved upon the district court's receipt of the mandate.
 
 
 7
 In May 1985, while the injunction was still in effect, both Hampton and Suntip submitted MSEP plans for Forest Service approval. Both re-submitted their plans in December, within 30 days of the injunction's dissolution.
 
 
 8
 In 1986 and 1987, the Forest Service informed Hampton and Suntip that they had not met the performance deadlines in their contracts and that the contracts were terminated. The Forest Service refused to accept their MSEP plans, because the plans were filed after the original February 15, 1984 deadline. Hampton and Suntip then filed the suits which are the subject of the present appeals.
 
 
 9
 In each of their cases, the district court granted Hampton and Suntip summary judgment, ordering the Forest Service to approve their MSEP plans. Hampton Tree Farms, Inc. v. Block, No. 85-1085, 1987 WL 115596 (D.Or. April 20, 1987); Suntip Co. v. Yeutter, No. 87-1360 (D.Or. May 10, 1990). Because Hampton and Suntip had filed their MSEP plans while the injunction was still in effect, the court ruled that the filings had been timely.
 
 
 10
 In Hampton's case, the court also ruled that the Forest Service's rejection of its application was "seemingly arbitrary." Hampton, slip op. at 2.
 
 
 11
 In Suntip's case, the court ruled that, in refusing to consider late-filed MSEP applications, the Forest Service had changed, without proper administrative procedure, the rule it had adopted in compliance with the North Side injunction. In that case, the court also ruled that the Forest Service was estopped from denying the "full force and effectiveness" of the injunction. Suntip, slip op. at 2-3.
 
 
 12
 The Forest Service appeals these rulings.
 
 
 13
 I. Retroactive Enforcement of the Void Injunction
 
 
 14
 The Forest Service argues that in issuing judgment for Hampton and Suntip, the district court was retroactively enforcing a void injunction. Hampton and Suntip argue that while the injunction was valid, they had acquired and exercised the right to file their MSEP plans late. In granting them summary judgment, they argue, the district court was merely enforcing these existing rights.
 
 
 15
 In Scott & Fetzer Co. v. Dile, 643 F.2d 670 (9th Cir.1981), the district court imposed civil contempt sanctions against a party who had disobeyed an injunction. At the time the court imposed the sanctions, the injunction was in full force. On appeal, this court overturned the injunction. In addition, we reversed the award of sanctions.
 
 
 16
 In reaching this conclusion, this court relied on United States v. United Mine Workers of America, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947). Scott & Fetzer, 643 F.2d at 675. In United Mine Workers, the Supreme Court held that "[t]he right to remedial relief falls with an injunction which events prove was erroneously issued." 330 U.S. at 295, 67 S.Ct. at 696.
 
 
 17
 The lesson of these cases is that once an injunction in a civil case has been invalidated, rights granted under the injunction no longer exist and cannot be enforced.[1] See also Latrobe Steel Co. v. United Steelworkers of America, AFL-CIO, 545 F.2d 1336, 1346 (3d Cir.1976) ("The United Mine Workers doctrine ... recognizes that a private party should not profit as a result of an order to which a court determines, in retrospect, he was never entitled."); Sandler v. Tarr, 345 F.Supp. 612, 621-22 (D.Md.1971) ("An order issued without jurisdiction is null and void--it never existed.... [R]elief may [not] be based on the fact that the order had existed at an earlier time.") aff'd, 463 F.2d 1096 (4th Cir.1972).
 
 
 18
 Hampton and Suntip argue that Littell v. Morton, 369 F.Supp. 411 (D.Md.1974) suggests a contrary rule. In Littell, the general counsel of the Navajo Tribe had previously obtained an injunction preventing the tribe from firing him. The fourth circuit overturned that injunction. While the injunction was still in force, however, the general counsel had performed legal services for the tribe. At trial, the district court awarded the general counsel fees for these services. Id. at 415.
 
 
 19
 The Littell court justified its award on a theory of restitution. As restitution, the court treated the award as a matter within the discretion of the court, and not as the enforcement of a right. Id. at 419. Littell does not support Hampton and Suntip.
 
 
 20
 Applying the United Mine Workers principles to this case, Hampton and Suntip cannot rely on the voided injunction to justify filing their MSEP plans after the February 15, 1984 deadline. Rather than seeking contract extensions in a timely fashion, they elected to take a chance on an invalid injunction. Hampton and Suntip now seek to improve their position by relying on an option that has long since been extinguished. The district court had no authority to rewrite the Forest Service MSEP to accommodate contractors who had rejected the MSEP deadline while waiting to see how the injunction fared on appeal.
 
 II. Change of Rules
 
 21
 In Suntip, the district court held that "policies of the Forest Service adopted after issuance of the North Side injunction adapting to the existence of the injunction were not thereafter changed in accordance with requirements of law, thereby rendering unenforceable any changes to such policies otherwise attempted." Suntip, slip op. at 2-3. Underlying this holding is the assumption that, in complying with the injunction, the Forest Service had adopted an agency rule. This assumption is incorrect.
 
 
 22
 In Angle v. United States, 709 F.2d 570 (9th Cir.1983), the Secretary of the Interior had promulgated regulations establishing a deadline of September 22, 1969 by which certain Native Americans could apply to receive land shares. The deadline was established by regulation and was published in the Federal Register. Id. at 571. In September and October of 1970, the Secretary issued a memorandum authorizing area directors to accept applications filed after the deadline. The Secretary never published in the Federal Register a notice that it had amended the original rule. In February 1971, the Secretary circulated a second memorandum, ordering area directors to cease accepting late applications. Those who filed applications after February 1971 sued, claiming that the Secretary had improperly refused to accept their applications. This court held that the original deadline was the only binding agency rule. Neither memorandum had been issued in accord with proper rulemaking procedures. Thus, neither had become an agency rule. Id. at 577.
 
 
 23
 In this case, the Forest Service published the February 15, 1984 deadline in the Federal Register, after first soliciting public comment on the MSEP program. See 48 Fed.Reg. 38862, 38862-64 (Aug. 26, 1983); 48 Fed.Reg. 54812, 54814 (Dec. 7, 1983). The February 15, 1984 deadline was the only one ever published in the Federal Register. Thus, the Forest Service's rejection of Hampton and Suntip' MSEP plans due to lateness could not have been the result of an improperly created or modified agency rule.
 
 III. Arbitrary and Capricious Actions
 
 24
 Hampton and Suntip argue that the Forest Service acted arbitrarily and capriciously in approving late-filed MSEP plans of other similarly situated purchasers, while rejecting their plans. During the original class-action suit underlying this case, the Justice Department offered to grant, and did grant, MSEP approvals to class members who settled. Hampton and Suntip chose not to accept the settlement offer. Under these facts, the actions of the Forest Service were neither arbitrary nor capricious.
 
 IV. Estoppel
 
 25
 In Suntip's case, the district court held that "defendants are estopped from denying the full force and effectiveness of the North Side injunction." Suntip, slip op. at 2. Because the North Side injunction was issued without jurisdiction and was held on appeal to be void, we need not decide what relevance, if any, the doctrine of estoppel bears to this case.
 
 
 26
 REVERSED.
 
 
 
 [1]
 For the purposes of this rule, United Mine Workers and its progeny distinguish civil from criminal contempt. Criminal contempt sanctions survive an injunction that is later invalidated because their purpose is to uphold the authority of the court