UNITED STATES of America, Plaintiff,

v.

**HAMPTON TREE FARMS, INC., Defendant.**

Civ. No. 93–936–FR.

United States District Court,
D. Oregon.

Aug. 11, 1994.

Frank W. Hunger, Asst. Atty. Gen., Kristine Olson Rogers, U.S. Atty., Riley J. Atkins, Asst. U.S. Atty., Portland, OR, David M. Cohen, Allen L. Lear, Sean P. Murphy, Dept. of Justice, Civil Div., Washington, DC, for plaintiff.

John P. Bledsoe, John B. Crowell, Jr., Charles J. Pruitt, Lane Powell Spears Lubersky, Portland, OR, for defendant.

## OPINION

FRYE, Judge:

The matters before the court are (1) the motion of the defendant, Hampton Tree Farms, Inc., for summary judgment (# 49); (2) the cross-motion of the plaintiff, the United States of America, for summary judgment (# 58); and (3) the motion of Hampton Tree Farms, Inc. to compel production of documents (# 45).

## BACKGROUND

Litigation of which this lawsuit is a part between the United States of America and Hampton Tree Farms, Inc. (Hampton) involves eleven contracts for the cutting of timber on public lands. A concise history of the litigation is chronicled in *Hampton Tree Farms, Inc. v. Yeutter*, 956 F.2d 869 (9th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 56, 121 L.Ed.2d 25 (1992) (hereafter, *Yeutter*), a consolidated action involving eleven timber sale contracts between Hampton and

the United States Forest Service (the Forest Service) and eight timber sale contracts between Suntip Co. (Suntip) and the Forest Service. In *Yeutter,* the United States Court of Appeals for the Ninth Circuit stated:

In the late 1970s, purchasers bid up the price of government timber for future cutting. Many, including Hampton and Suntip, entered into purchasing contracts which locked them into high prices. After the economic downturn of the early 1980s, many of these companies faced substantial losses in meeting their contractual obligations.

In response to Congressional pressure, the Forest Service adopted the "Multi–Sale Extension Policy" (MSEP). The MSEP granted those timber companies which chose to participate a five-year extension for completing their contracts. In return, the companies forfeited eligibility for any additional contract extensions and accepted certain modifications of their contracts. The final version of the MSEP was published in the Federal Register on December 7, 1983. It required the companies wishing to participate in the program to submit a plan to the Forest Service by February 15, 1984. 48 Fed.Reg. 54,812, 54[,]814 (1983).

Hampton and Suntip chose not to submit MSEP plans in accordance with the February 15, 1984 deadline. Instead, they chose to rely on a district court injunction then on appeal. *North Side Lumber Co. v. Block,* No. 83–490, slip op. (D.Or. Feb. 15, 1984). In *North Side,* the plaintiff class of timber companies was seeking a judicial remedy for the economic problem addressed by the MSEP. The timber companies claimed that it had become commercially impracticable to perform their contracts. They requested that the district court allow them to rescind the contracts and enjoin the Forest Service from enforcing them.

On February 15, 1984, the *North Side* district court issued a preliminary injunction which ordered the Forest Service not to enforce its contracts with members of the plaintiff class. It also enjoined enforcement of the February 15, 1984 dead-

line for submitting MSEP plans. The injunction required the Forest Service to allow class members 30 days following dissolution of the preliminary injunction "to submit and have considered by the Forest Service" MSEP plans. *North Side,* slip op. at 2.

On February 20, 1985, this court reversed that injunction, holding that the district court lacked jurisdiction over the plaintiffs' contract claims. *North Side Lumber Co. v. Block,* 753 F.2d 1482 (9th Cir.1985). Due to delays related to petitions for rehearing and for certiorari, this court's mandate in *North Side* did not issue until November 28, 1985. The district court received the mandate on December 2, 1985. The parties agree that the injunction was dissolved upon the district court's receipt of the mandate.

In May 1985, while the injunction was still in effect, both Hampton and Suntip submitted MSEP plans for Forest Service approval. Both re-submitted their plans in December, within 30 days of the injunction's dissolution.

In 1986 and 1987, the Forest Service informed Hampton and Suntip that they had not met the performance deadlines in their contracts and that the contracts were terminated. The Forest Service refused to accept their MSEP plans, because the plans were filed after the original February 15, 1984 deadline. . . .

[T]he district court granted Hampton and Suntip summary judgment, ordering the Forest Service to approve their MSEP plans. *Hampton Tree Farms, Inc. v. Block,* No. 85–1085, 1987 WL 115596 (D.Or. April 20, 1987); *Suntip Co. v. Yeutter,* No. 87–1360, 1990 WL 357213 (D.Or. May 10, 1990). Because Hampton and Suntip had filed their MSEP plans while the injunction was still in effect, the court ruled that the filings had been timely.

In Hampton's case, the court also ruled that the Forest Service's rejection of its application was "seemingly arbitrary." *Hampton,* slip op. at 2.

In Suntip's case, the court ruled that, in refusing to consider late-filed MSEP applications, the Forest Service had changed,

without proper administrative procedure, the rule it had adopted in compliance with the *North Side* injunction. In that case, the court also ruled that the Forest Service was estopped from denying the "full force and effectiveness" of the injunction. *Suntip,* slip op. at 2–3.

*Yeutter,* 956 F.2d at 870–71.

On April 7, 1988, Hampton filed an amended complaint for declaratory relief against the government and certain governmental officials in *Yeutter.* Hampton sought, among other things, a declaration (1) that Hampton was entitled to have the original termination dates of the eleven timber sale contracts extended as provided by the Multi–Sale Extension Policy of the Forest Service; (2) that the government had wrongfully refused to extend the termination dates of the contracts; (3) that the government had wrongfully terminated the contracts; (4) that Hampton was not in default on the contracts; and (5) that the government had breached the contracts. No monetary relief was sought.

The government filed its answer to Hampton's amended complaint in *Yeutter* on April 27, 1988. By that time, the government had declared all eleven timber contracts to be in default because Hampton had not performed the contracts on or before the date set for the automatic termination of the contracts. In addition, the contracting officers had issued final decisions for ten of the eleven contracts. Furthermore, the decision of the contracting officer had not yet been issued for the Yoncalla Redo contract, although the timber associated with that contract had been resold by the government on September 27, 1987. In its answer to Hampton's amended complaint, the government admitted the allegations of Hampton that the contracting officers had notified Hampton that all of the subject sales had been terminated and had affirmatively averred that claims for damages had been paid by its contracting officers with respect to ten of the eleven contracts. The government did not file a counterclaim seeking to recover damages for the default of Hampton on these timber sales.

The final decision of the contracting officer was issued with respect to the Yoncalla Redo contract on May 31, 1988.

On October 30, 1989, Hampton filed a supplement to the amended complaint in *Yeutter* adding the allegation that the contracting officers for the government had issued final decisions claiming damages for Hampton's default on all of the contracts. The government filed an answer to Hampton's supplemental pleading on November 17, 1989 admitting Hampton's allegation that the contracting officers for the government had issued final decisions claiming damages as to all of the contracts. The government did not file a counterclaim for damages.

Between March 4, 1988 and May 24, 1989, within a year after receiving the final decisions of the contracting officers, Hampton filed separate actions in the Court of Federal Claims challenging each of these final decisions. Suntip, whose action had been consolidated with Hampton's in the *Yeutter* case, had also defaulted on all nine of its timber contracts. Suntip, like Hampton, filed separate actions in the Court of Federal Claims challenging each of the final decisions of the contracting officers. The eleven cases filed by Hampton in the Court of Federal Claims were consolidated with the nine cases filed by Suntip. On May 3, 1988, the government moved to dismiss the cases filed in the Court of Federal Claims, arguing that 28 U.S.C. § 1500 divested the Court of Federal Claims of subject matter jurisdiction.

The Court of Federal Claims did not rule forthwith on the motions of the government to dismiss. By June 27, 1989, the Court of Federal Claims had stayed further proceedings as to Hampton's eleven contracts and Suntip's nine contracts pending the final disposition of the consolidated *Yeutter* case.

In March of 1990, the Honorable James M. Burns, United States District Judge, granted summary judgment in favor of Hampton and Suntip in the *Yeutter* case, holding, inter alia, that Hampton and Suntip had been entitled to have the subject contracts extended; that Hampton and Suntip were not in default; and that by terminating the contracts, the government had breached its contracts with Hampton and Suntip.

In December of 1991, the United States Court of Appeals for the Ninth Circuit reversed the two district court rulings in favor of Hampton and Suntip in the consolidated *Yeutter* case, holding that because the *North Side* injunction was issued when the district court had no subject matter jurisdiction, the injunction was void for all purposes, and the companies had mistakenly relied upon it. *Yeutter,* 956 F.2d at 871.

In May of 1992, the government renewed its still pending motions to dismiss the cases on appeal to the Court of Federal Claims. The government argued that Hampton and Suntip had asserted the same claims in the *Yeutter* case, and that, by virtue of 28 U.S.C. § 1500, which provides that the Court of Federal Claims shall not have jurisdiction of any claim which a plaintiff has pending in any other court in any suit against the government, the Court of Federal Claims did not have subject matter jurisdiction.

Following the decision of the United States Supreme Court in *UNR Indus. v. United States,* 962 F.2d 1013 (Fed.Cir.1992), *aff'd sub nom., Keene Corp. v. United States,* —— U.S. ——, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993), the Court of Federal Claims granted the still pending motions of the government to dismiss Hampton's eleven suits for lack of subject matter jurisdiction in July of 1993. Thereafter, the Court of Federal Claims dismissed all of the actions filed by Suntip and Hampton.

On June 9, 1993, the government filed its complaint against Suntip in this court, seeking to recover the damages assessed by the contracting officers in their final decisions. *United States v. Suntip Co.,* Civil No. 93–681–JO (hereafter, *U.S. v. Suntip* ). Suntip moved to dismiss the complaint for failure to state a claim, contending that each claim was time-barred on the face of the complaint. The government responded to Suntip's motion to dismiss the complaint with a motion for summary judgment and evidence supporting its motion for summary judgment. Suntip then filed a cross-motion for summary judgment, arguing that the claims of the government were, in addition to being time-barred, barred by the doctrine of *res judicata* because the government had failed to assert its claims as compulsory counterclaims in *Suntip Co. v. Yeutter,* No. 87–1360, 1990 WL 357213 (D.Or. May 10, 1990), *rev'd sub nom., Hampton Tree Farms, Inc. v. Yeutter,* 956 F.2d 869 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 56, 121 L.Ed.2d 25 (1992).

The motion of Suntip to dismiss the complaint and the motion of the government for summary judgment in *U.S. v. Suntip* came on for hearing before the Honorable Robert E. Jones, United States District Judge, on September 20, 1993. Suntip's motion to dismiss was treated by Judge Jones as a motion for summary judgment. On October 7, 1993, Judge Jones ruled:

> While the government's complaint is not time-barred on its face, because its claims for damages were compulsory counterclaims under Fed.R.Civ.Pro. 13(a), they should have been asserted in 1988 when the government filed its answer to Suntip's suit for declaratory relief, or, at the latest, in 1989 when Suntip filed the last of its claims court appeals. Because they were not, they are now barred by *res judicata* and Suntip's cross-motion for summary judgment is granted.

*U.S. v. Suntip,* Opinion and Order, p. 2.

The government filed its complaint in this action on August 2, 1993. In its motion for summary judgment filed on August 19, 1993, Hampton sought dismissal based on the defense of the statute of limitations. The government filed a cross-motion for summary judgment arguing that it was entitled to summary judgment without litigating the merits because the action was merely an "enforcement action." The government cited *Seaboard Lumber Co. v. United States,* 903 F.2d 1560, 1562 (Fed.Cir.1990), *cert. denied,* 499 U.S. 919, 111 S.Ct. 1308, 113 L.Ed.2d 243 (1991), to support this contention.

In an opinion and order dated December 15, 1993, this court ruled that Claims 2, 3, 4, 6, 7, 8, 9, 10 and 11 were time-barred under both provisions of 28 U.S.C. § 2415(a). The court ruled that Claims 1 and 5, concerning the Blodgett 008 and the Yoncalla Redo contracts, were not time-barred. The court determined that *Seaboard* did not apply to this action.

Before the court is the motion of Hampton for summary judgment on the two remaining

claims. Hampton argues that the doctrine of res judicata bars these claims. The government moves for summary judgment arguing that this action is merely an "enforcement action," again citing the *Seaboard* case.

## UNDISPUTED FACTS

Hampton filed its claims in *Yeutter* on April 7, 1988.

| Claim Number & Contract Name | Filing in Court of Claims | Notice of Default | Final Decision |
|---|---|---|---|
| #1 Yoncalla Redo 78 | 5/24/89 | 3/28/86 | 5/31/88 |
| #5 Blodgett 008 | 12/15/88 | 3/31/86 | 1/4/88 |

## APPLICABLE STANDARD

Summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden to establish the absence of a material issue of fact for trial is on the moving party. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). This burden "may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The burden shifts to the nonmoving party to "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553.

Assuming there has been adequate time for discovery, summary judgment should then be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. All inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962).

The following chart sets out (1) the dates on which Hampton filed an action in the Court of Federal Claims for the two contracts, (2) the dates on which the government issued notices of default, and (3) the dates on which the contracting officers issued their final decisions:

When different ultimate inferences can be reached, summary judgment is not appropriate. *Sankovich v. Life Ins. Co.*, 638 F.2d 136, 140 (9th Cir.1981).

## CONTENTIONS OF THE PARTIES

Hampton contends that it is entitled to prevail on its motion for summary judgment because the claims of the government on these two remaining contracts are barred by the doctrine of res judicata. The government contends that it is entitled to prevail on its motion for summary judgment because this action is a summary enforcement action in which the court should not consider the merits of any of Hampton's defenses, including the defense of res judicata.

The parties agree that under the doctrine of judicial estoppel, neither party may argue a legal position which is inconsistent with the position that that party took in the Court of Federal Claims.

## ANALYSIS AND RULING

1. *The Motion of the Government for Summary Judgment*

The government argues, as it did in its prior motion for summary judgment, that it is entitled to prevail on all claims without litigating on the merits because this is an "enforcement action." To support this con-

tention, the government cites a footnote in *Seaboard, supra*, 903 F.2d at 1562.

In its opinion and order dated December 15, 1993, this court wrote:

> In *U.S. v. Suntip*, Judge Jones stated: "I find no basis for the government's position that this is an 'enforcement action,' entitling the government to summary judgment without having to litigate on the merits." *Id.*, Opinion and Order, p. 15. This court concurs with the conclusion of Judge Jones. The court finds that the rule of *Seaboard* does not apply here because Hampton preserved its right to defend against the government's action when it filed a direct access suit in the United States Claims Court.

*Id.* at 22. The government has not advanced any new arguments in its motion for summary judgment. Therefore, what the government seeks is reconsideration of the court's ruling of December 15, 1993. The court declines to reconsider that ruling.

2. *The Motion of Hampton for Summary Judgment*

■ Hampton contends that the doctrine of res judicata bars the government from asserting claims for damages as to the Blodgett 008 and Yoncalla Redo contracts. In particular, Hampton argues that Fed. R.Civ.P. 13(a) bars this action. Fed.R.Civ.P. 13(a) provides, in relevant part:

> **(a) Compulsory Counterclaims.** A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim.... But the pleader need not state the claim if ... at the time the action was commenced the claim was the subject of another pending action....

Hampton argues that the claims of the government for damages on all of the contracts which were declared in default matured during the *Yeutter* case and were therefore compulsory counterclaims in those actions. The government argues that the damages claimed here did not occur until after the decisions of the contracting officers

became final and unappealable. In this case, the government argues that the decisions of the contracting officers were not final until after the Court of Federal Claims had dismissed the action. The government reasons that these claims for damages could not have been compulsory counterclaims because the government did not have the right to enforce the contracts while the *Yeutter* case was pending.

In *U.S. v. Suntip*, Judge Jones faced the same question that this court faces. Although the dates of the final decisions of the contracting officers and the notices of default vary for each of the nine Suntip contracts and the eleven Hampton contracts, the cases have the same procedural posture with regard to the issue of res judicata. Suntip was also a plaintiff in the *Yeutter* case, and Suntip's nine cases were joined with Hampton's eleven cases in the Court of Federal Claims. The government does not dispute the procedural and factual similarities between *U.S. v. Suntip* and this action; rather, the government argues that Judge Jones was wrong in deciding *U.S. v. Suntip* and urges this court to reject the decision of Judge Jones.

In an opinion and order dated October 7, 1993, Judge Jones granted the motion of Suntip for summary judgment as to all of the government's claims. In his opinion and order, he stated that the reason for granting the motion of Suntip for summary judgment was "because [the government's] claims for damages were compulsory counterclaims under Fed.R.Civ.Pro. 13(a), [and] they should have been asserted ... when the government filed its answer to Suntip's suit for declaratory relief." *U.S. v. Suntip*, p. 2. Judge Jones reasoned:

> [B]ecause the claims court would never have jurisdiction over the [contracting officers'] final decisions, the government should have moved to enforce those final decisions by filing counterclaims in the district court action. Authority for this is found in *Hampton [Tree Farms, Inc. v. Yeutter,* ], 956 F.2d 869 (9th Cir.1992)], where the Ninth Circuit found that Hampton and Suntip could not rely on a voided injunction to justify filing their MSEP plan after the Feb. 15, 1984 deadline:

Rather than seeking contract extensions in a timely fashion, they elected to take a chance on an invalid injunction. Hampton and Suntip now seek to improve their position by relying on an option that has long since been extinguished.

*Hampton,* 956 [F.2d] at 871.

That is precisely what the government is doing here. Rather than filing a counterclaim in a timely fashion, it chose to take a chance on an invalid claims court action. The government now, belatedly, seeks an award of damages on a breach of contract claim "by relying on an option that has long since been extinguished."

*Id.* at 16–17. This court concurs with the conclusion of Judge Jones in *U.S. v. Suntip.* The claims of the government for damages on the Blodgett 008 and Yoncalla Redo contracts were compulsory counterclaims under Fed.R.Civ.P. 13(a) and should have been asserted when the government filed its amended answer in the *Yeutter* case on November 17, 1989. In its answer in the *Yeutter* case, the government admitted Hampton's allegation that contracting officers had issued final decisions. The government's claims for damages for the Blodgett 008 and Yoncalla Redo contracts are, therefore, barred by the doctrine of res judicata.

3. *Judicial Estoppel*

 The application of the doctrine of judicial estoppel prevents a party from taking a position in a first case, only to change that position in order to win a second case. Wright, Miller and Cooper, *Federal Practice and Procedure: Jurisdiction,* § 4477 at 779 (1981). Both parties argue that the doctrine of judicial estoppel bars the opposing party from taking a legal position in this court which is inconsistent with the legal position that the party took before the United States Court of Claims on the issue of whether that court had jurisdiction over Hampton's eleven suits.

Both parties point out that the United States Court of Appeals for the Ninth Circuit has declined to adopt either the minority or the majority view of judicial estoppel. *See Yanez v. United States,* 989 F.2d 323, 325–27

(9th Cir.1993). Under the majority view, the doctrine of judicial estoppel cannot be used unless the position taken in the first litigation is inconsistent with the claim made in the subsequent litigation and was adopted in some manner by the court in the particular litigation. *Id.* Under the minority view, the doctrine of judicial estoppel applies even when a party was unsuccessful in asserting its position in the first judicial proceeding if the court determines that the alleged offending party engaged in fast and loose behavior which undermined the integrity of the court. *Id.*

The government argues that Hampton should be judicially estopped from taking a position which is inconsistent with the position that it took in the Court of Federal Claims. In defense of the government's motion to dismiss the suit before the Court of Federal Claims, Hampton argued that the district court in the *Yeutter* case was "without jurisdiction to review determinations by contracting officers." Exhibit 1 to Plaintiff's Concise Statement, p. 13.

Hampton did not prevail in the Court of Federal Claims. Therefore, Hampton could not be estopped under the majority view. Under the minority view, Hampton could be estopped only if it engaged in "fast and loose behavior" which undermined the integrity of the court. *Yanez* at 327. The court finds that even if it was to apply the minority test, Hampton did not engage in the type of behavior which warrants estoppel.

The court need not reach the issue of whether the government can be judicially estopped in this action because the court has already determined that the doctrine of res judicata bars the government's claims against Hampton.

**CONCLUSION**

The motion of Hampton for summary judgment (# 49) is granted; the cross-motion of the government for summary judgment (# 58) is denied; and the motion of Hampton to compel production of documents (# 45) is

rendered moot. The court will enter judgment in favor of Hampton.