832 So.2d 403 (2002)
Frances GLASS
v.
ALTON OCHSNER MEDICAL FOUNDATION (Ochsner Foundation Hospital) Ochsner Clinic, L.L.C. and Warren R. Summer, M.D.
No. 2002-CA-0412.
Court of Appeal of Louisiana, Fourth Circuit.
November 6, 2002.
*404 Clarence F. Favret, III, Favret, Demarest, Russo & Lutkewitte, New Orleans, LA, for Frances Glass.
Charles F. Gay, Jr., C. Byron Berry, Jr., Adams and Reese, LLP, New Orleans, LA, for Alton Ochsner Medical Foundation and Ochsner Clinic, L.L.C.
Richard P. Ieyoub, Attorney General, Jude D. Bourque, Assistant Attorney General, Baton Rouge, LA, for Warren R. Summer, M.D.
(Court composed of Chief Judge WILLIAM H. BYRNES III, Judge CHARLES R. JONES, and Judge PATRICIA RIVET MURRAY).
CHARLES R. JONES, Judge.
The plaintiff/appellant, Frances Glass, appeals the judgment of the Civil District Court for the Parish of Orleans granting an Exception of Lis Pendens in favor of the Defendant/Appellees, Alton Ochsner Medical Foundation, Ochsner Clinic, L.L.C. (hereinafter collectively "Ochsner") and Warren R. Summer, M.D. Following a review of the record, we reverse and remand.

FACTS AND PROCEDURAL HISTORY
On August 1, 1997, Wayne Hicks, the son of Ms. Glass, nearly drowned at The Magnolia School, Inc. located in Harahan, Louisiana. As a result of the accident, Wayne was admitted to Ochsner for treatment. From August 1st to August 5th of 1997, Dr. Summer treated Wayne at Ochsner. During Wayne's hospital stay, he *405 developed pneumothorax, ARDS, pneumonia, tension pneumothorax, and various other complications. Dr. Summer later ordered Wayne's extubation and the removal of a ventilator. Eventually, Wayne died as a result of his deteriorating condition.
Ms. Glass filed a survival and wrongful death action (hereinafter the "original petition") in the Jefferson Parish Twenty-fourth Judicial District Court against The Magnolia School, Inc., and against Nicole Weber and Brenda Walkerwho are employees of the Magnolia Schoolfor the near drowning and ultimate death of Wayne. In the original petition, The Magnolia School, Inc, Nicole Weber and Brenda Walker (hereinafter collectively the "Magnolia School defendants") filed a Third Party Demand against Ochsner and Dr. Summer for contribution and/or indemnity in the event that they were held liable.
After trial on the merits, the district court found that the Magnolia School defendants were not negligent. Ms. Glass appealed the decision to the Fifth Circuit Court of Appeal, where she prevailed. The Fifth Circuit reversed the district court, found liability and awarded damages. The Magnolia School defendants filed a Writ of Certiorari to the Supreme Court. The Supreme Court has not yet rendered a decision in that case.
Subsequent to the filing of the original petition, two separate medical review panels were empanelled for a determination as to the medical malpractice of Dr. Summer and Ochsner. However, the findings of the panels are unknown to this Court.
On June 18, 2001, Ms. Glass filed the instant suit in the Civil District Court for the Parish of Orleans, against Ochsner and Dr. Summer. Ms. Glass contended that Wayne's complications and resulting death were caused by the medical malpractice of Ochsner and Dr. Summer. In response to Ms. Glass's petition, both Ochsner and Dr. Summer respectively filed an Exception of Lis Pendens and Ochsner filed an additional Exception of Prematurity. They contended the Exception of Lis Pendens should have been granted because the original petition was already in progress against them in Jefferson Parish, and both suits involved the same transaction or occurrence, and are between the same parties in the same capacities under La.C.C.P. art. 531. The district court granted the exceptions filed by Dr. Summer and Ochsner, on September 12, 2001 and September 14, 2001 respectively, and dismissed the suit filed by Ms. Glass as to Dr. Summer and Ochsner.
On June 19, 2001, Ms. Glass filed another suit against Ochsner and Dr. Summer (hereinafter the "third suit") in the Twenty-fourth Judicial District Court in Jefferson Parish for medical malpractice. The third suit is currently pending as well, and curiously, had not been met with an exception at the time of submission in this court.
In the instant suit, Ms. Glass appeals the judgment of the district court granting the Exceptions of Lis Pendens.

STANDARD OF REVIEW
The standard of review of appellate courts in reviewing a question of law is simply whether the court's interpretative decision is legally correct. Phoenix Assur. Co. v. Shell Oil Co., 611 So.2d 709, 712 (La.App. 4 Cir.1992). Furthermore, if the decision of the district court is based on an erroneous application of law rather than on a valid exercise of discretion, the decision is not entitled to deference by the reviewing court. Kem Search, Inc. v. Sheffield, 434 So.2d 1067, 1071-1072 (La.1983).

*406 LIS PENDENS

La. C.C.P. art. 531 states:
When two or more suits are pending in a Louisiana court or courts on the same transaction or occurrence, between the same parties in the same capacities, the defendant may have all but the first suit dismissed by excepting thereto as provided in Article 925. When the defendant does not so except, the plaintiff may continue the prosecution of any of the suits, but the first final judgment rendered shall be conclusive of all.
Additionally, the test for deciding whether an Exception of Lis Pendens should be granted is to inquire whether a final judgment in the first suit would be res judicata in the subsequently filed suit. Domingue v. ABC Corporation, 96-1224, p. 3 (La.App. 4 Cir.1996), 682 So.2d 246, 248, writ denied, 96-1947 (La.11/1/96), 681 So.2d 1268, citing, Fincher v. Ins. Corp. of America, 521 So.2d 488 (La.App. 4 Cir. 1988), writ denied 522 So.2d 570 (La.1988). The Exception of Lis Pendens has the same requirements as the Exception of Res Judicata, and is properly granted when the suits involve the same transaction or occurrence between the same parties in the same capacities. Id. at 248.
The first requirement for granting an Exception of Lis Pendens is that there are two or more suits pending. A suit is considered pending for Lis Pendens purposes if it is being reviewed by an appellate court. Board of Trustees of Sheriff's Pension and Relief Fund v. City of New Orleans, XXXX-XXXX, p. 2, (La.App. 4 Cir. 3/13/02), 813 So.2d 543,citing, Maddens Cable Service, Inc. v. Gator Wireline Services, Ltd., 509 So.2d 21, 23 (La.App. 1st Cir.1987); Daul Insurance Agency, Inc. v. Parish of Jefferson, 447 So.2d 1208, 1210 (La.App. 5th Cir. 1984); Scott v. Ware, 160 So.2d 237 (La.App. 2nd Cir. 1964).
The suit subject to this appeal was filed in the Civil District Court for the Parish of Orleans on June 18, 2001. Ochsner contends that when Ms. Glass filed this suit the original petition was pending because she did not receive a ruling on her appeal from the Fifth Circuit until March 13, 2002. Ms. Glass does not deny that the original petition was pending at the time she filed the instant suit and she does not deny that she presently has two cases pending in Jefferson Parish. Both parties agree that no final judgment has been entered in the original petition.
There are three cases pending: the original petition, the instant suit and the third suit. The original petition is pending before the Supreme Court and the third suit is pending oral arguments in Jefferson Parish. Thus, the requirement that two or more cases are pending has been met.
As for the second requirement, Ms. Glass avers that both proceedings involve the same transaction or occurrence. Ms. Glass asserts that she is pursuing a negligent cause of action against the Magnolia School defendants for their negligent supervision and monitoring of Wayne while he swam in the school's pool on August 1, 1997. However, her case against Ochsner and Dr. Summer is based upon a medical malpractice claim for the treatment that Wayne received while under the care of Ochsner from August 1, 1997 to his death on August 5, 1997. Ms. Glass argues that these are separate and different occurrences.
Ochsner's response to these assertions is that Ms. Glass has misinterpreted La. C.C.P. art. 531, and is relying on the pre-1991 amendment of said statute. Ochsner argues that La. C.C.P. art. 531 no longer requires that the pending suits share the same cause of action. Ochsner argues under Domingue, supra, that the Exception *407 of Lis Pendens has the same requirements as the Exception of Res Judicata, and is properly granted when the suits involve the same transaction or occurrence between the same parties in the same capacities. Domingue at 248. We agree.
The original petition, the instant suit and the third suit all involve the same transaction or occurrence: Wayne Hick's death. The original petition is based on the negligent supervision that led to Wayne Hicks's death while the instant suit is based on the negligence of Ochsner and Dr. Summer in their medical treatment of Wayne Hicks, which allegedly led to his death. The third suit is also against Ochsner and Dr. Summer for medical malpractice. Although Ms. Glass promulgates various theories of liability, she is bringing survival actions and wrongful death claims in all three cases.
Furthermore, the application of the holding in Weber v. Charity Hospital of Louisiana, 475 So.2d 1047 (La.1985), also contributes to the understanding that this case involves the same transaction or occurrence. The Supreme Court in Weber rationalized that "a tortfeasor may be liable not only for the injuries he directly causes to the tort victim, but also for the tort victim's additional suffering caused by inappropriate treatment by the doctor, nurse or hospital staff member who treats the injuries directly caused by the tortfeasor." Id. at 1050 citing Berger v. Fireman's Fund Insurance Co., 305 So.2d 724 (La.App. 4th Cir.1974); Hillebrandt v. Holsum Bakeries, Inc., 267 So.2d 608 (La. App. 4th Cir.1972); Hudgens v. Mayeaux, 143 So.2d 606 (La.App. 3rd Cir.1962); Restatement (Second) of Torts § 457 (1965).
The Supreme Court additionally recognized in Lambert v. United States Fidelity and Guaranty Company, 629 So.2d 328, 329 (La. 1993), that the solidary liability binding the original tortfeasor and the subsequently treating health care providers in Weber granted the tortfeasor the right to seek contribution from the health care provider.
The Weber and Lambert decisions hold tortfeasors liable for two types of harms: 1.) the harm they directly caused and 2.) the subsequent harm created by a health care provider(s) for which the tortfeasors are the but for cause. Holding tortfeasors accountable for resulting harms that they are not directly responsible for combines the original tort with the medical harm that followed into one occurrence for liability purposes. Therefore, the resulting harms suffered by plaintiffs must arise out of the same transaction or occurrence in order for this Court to hold health care provider defendants solidarity liable with the initial tortfeasor.
The second requirement has been met for all three of the cases involving the death of Wayne Hicks. Moreover, Supreme Court case law construes these cases as arising out of the same transaction or occurrence for liability purposes.
The final requirement for obtaining an Exception of Lis Pendens is proving that both or all cases are between the same parties in the same capacities. Although Ms. Glass admits that she is the plaintiff in both the original petition and the instant suit, she argues that there are two distinct groups of principal defendants: 1) Magnolia School defendants in the original petition, and 2) Ochsner and Dr. Summer in the present suit. She challenges the district court's finding that the same parties requirement was met because the claim filed against Ochsner and Dr. Summer in the original petition was a Third Party Demand filed by the Magnolia School defendantsnot by her.
Ms. Glass also asserts that the holding in Domingue should be applied to this case *408 to resolve the Third Party Demand issue because the issues are analogous. Ms. Glass maintains that the Court in Domingue found that defendants who are third party defendants in the first suit cannot successfully assert an Exception of Lis Pendens because a judgment in the first suit would not have a res judicata effect on the plaintiff's claims against them in the second suit.
Yet, this Court finds that Domingue is not applicable to the instant suit with respect to the issue of the Magnolia School defendants' Third Party Demand. The holding in Domingue was limited to the factual circumstances of that case. In Domingue, we denied the defendants' Exception of Lis Pendens because of the involvement of several defendants in harming the plaintiff over a twenty-year period. In that case, a finding of liability as to one defendant would have left the issue of the other defendants' liability unresolved. Domingue, 682 So.2d at 248.
Conversely, Ochsner argues that the identity of parties requirement is met whenever the same parties, their successors, or others appear so long as they share the same "quality" as parties, citing Welch v. Crown Zellerbach Corporation, 359 So.2d 154, 156 (La.1978). Ochsner posits that the Magnolia School defendants share the plaintiff status of Ms. Glass by virtue of their contribution claim against Ochsner and Dr. Summer.
Ochsner argues that the principal defendants in the original petition share plaintiff status with Ms. Glass because those defendants are subrogated to the rights of Ms. Glass by virtue of their contribution claim against Ochsner and Dr. Summer. Louisiana Civil Code Articles 1804 and 1805 define the right of contribution. Article 1804 states that "a solidary obligor who has rendered the whole performance, though subrogated to the right of the obligee, may claim from the other obligors no more than the virile portion of each." Article 1805 further expounds that:
A party sued on an obligation that would be solidary if it exists may seek to enforce contribution against any solidary co-obligor by making him a third party defendant according to the rules of procedure, whether or not that third party has been initially sued, and whether the party seeking to enforce contribution admits or denies liability on the obligation alleged by plaintiff.
The fact that the origin of the right of contribution lies in the principle of subrogation does not demonstrate that the Magnolia School defendants share the same quality of party as Ms. Glass. Moreover, it is the very existence of the Magnolia School defendants' right to seek contribution that distinguishes their status from that of Ms. Glass. The Magnolia School defendants' right to pursue a contribution claim against Ochsner and Dr. Summer through La. C.C. articles 1804 and 1805 automatically gives them greater rights than Ms. Glass possesses.
Under La. R.S. 40:1299.47(B), Ms. Glass was legally precluded from simultaneously suing Ochsner and Dr. Summer while suing the Magnolia School defendants because medical review panels had not yet been impaneled to evaluate their actions. Ms. Glass had to wait until findings were made before filing her original petition.
However, neither the Lambert holding nor La. C.C. articles 1804 and 1805 require alleged tortfeasors to wait for the empaneling or decision making of medical review panels before filing their Third Party Demands. The Supreme Court in Lambert, for instance, did not create requirements for tortfeasors to fulfill in order to file their Third Party Demand. The nonexistence of this requirement allows *409 tortfeasors to proceed against health care providers where the original plaintiffs are precluded. The Magnolia School defendants, for example, were able to file their Third Party Demand against Ochsner and Dr. Summer without having to wait for the empaneling of the medical review panels.
A basic tenet of subrogation is that the subrogee has no greater rights than the subrogor. Perkins v. Scaffolding Rental and Erection Service, Inc., 568 So.2d 549, 552 (La.1990), citing, Bosch v. Cummings, 520 So.2d 721 (La.1988); Theriot v. Bergeron, 552 So.2d 1 (La.App. 1st Cir.1989); La. Civ.Code 1825, 1826; Complaint of Admiral Towing and Barge Co., 767 F.2d 243 (5th Cir.1985). Nevertheless, in circumstances where the Lambert holding and La. C.C. articles 1804 and 1805 are applicable, a tortfeasor's right to bind health care providers to litigation before the original plaintiff can do so endows him or her with a greater privilege than the plaintiff possesses. Thus, the Magnolia School defendants are not plaintiffs in the same capacity as Ms. Glass in the original petition.
Additionally, the fact that Ms. Glass and the Magnolia School defendants are not the same quality of parties was further evidenced by the Twenty-fourth Judicial District Court's granting of the Magnolia School defendants' Third Party Demand. Ochsner and Dr. Summerin response to the demandfiled no Motion of Prematurity. Had Ochsner and Dr. Summer perceived the Magnolia School defendants to be plaintiffs possessing the same qualities as Ms. Glass, they would have filed a Motion of Prematurity against the original defendants as Ochsner did against Ms. Glass in the instant suit. Clearly, Dr. Summer and Ochsner did not interpret Ms. Glass and the third party plaintiffs, the Magnolia School defendants, to be of the same capacity from the onset of this suit.
In an effort to refute that the same quality of parties prong was satisfied, Ms. Glass further argues that Dr. Summer particularly should not have been granted an Exception of Lis Pendens because he was never served with the Third Party Demand in the original petition. She asserts that ninety days elapsed and no service was requested or effected on Dr. Summer. Ms. Glass cites Bellard v. Lake Charles Memorial Hospital, XXXX-XXXX (La.App. 3 Cir. 4/4/01), 787 So.2d 1017, which held that where service of process was never affected by the plaintiffs on the defendants in the first suit, then that proceeding becomes an absolute nullity. According to Ms. Glass, Dr. Summer was never a party to the original petition; therefore, he cannot raise an Exception of Lis Pendens because he is not a party to a pending lawsuit.
Responding to the arguments of Ms. Glass, Dr. Summer avers that Ms. Glass' contention that there is no prior suit pending is without merit. Dr. Summer posits that there is no dispute that the original petition is continuing and that the third party defendants may be brought into that suit at any time. He asserts that he has attended all the pre-trials and all of the hearings in the original petition. Dr. Summer further contends that Bellard concerns a unique fact pattern where none of the defendants were served and the first suit was dismissed as to all parties. He asserts that Bellard is not applicable to the instant suit. We agree.
Bellard is inapplicable to the instant suit. The Bellard case does not address what procedure should be followed when a co-defendant or a third party defendant is not served with service of process. Furthermore, in Bellard, the first suit was declared a nullity as to all parties not just *410 one party. Thus, this Court declines to apply Bellard in this instance. Despite the fact that Bellard is not applicable, Dr. Summer does not state whether he was properly served with the Third Party Demand. His assertion that the original petition is pending and that the third party defendants may be called into that suit at anytime does not resolve the issue of whether he was served with process in the original petition.
With regard to service of process, La. C.C.P. art. 6(A) states:
A. Jurisdiction over the person is the legal power and authority of a court to render a personal judgment against a party to an action or proceeding. The exercise of this jurisdiction requires:
(1) The service of process on the defendant, or on his agent for the service of process, or the express waiver of citation and service under Article 1201.
(2)The service of process on the attorney at law appointed by the court to defend an action or proceeding brought against an absent or incompetent defendant who is domiciled in this state.
(3)The submission of the party to the jurisdiction of the court by commencing an action or by the waiver of objection to the jurisdiction by failure to timely file the declinatory exception. La.C.C.P. art. 1201 further states:
A. Citation and service thereof are essential in all civil actions except summary and executory proceedings and divorce actions under Civil Code Article 102. Without them all proceedings are absolutely null.
B. The defendant may expressly waive citation and service thereof by any written waiver made part of the record.
C. Service of the citation shall be requested on all named defendants within ninety days of commencement of the action. When a supplemental or amended petition is filed naming any additional defendant, service of citation shall be requested within ninety days of its filing. The defendant may expressly waive the requirements of this Paragraph by any written waiver.
In addition to submitting to a court's jurisdiction by submitting a written waiver, a party can also waive an objection to the jurisdiction by an appearance of record. Poret v. Billy Ray Bedsole Timber Contractor, Inc., 31,531, p. 2 (La.App. 2 Cir. 1/22/99), 729 So.2d 632. An appearance of record includes filing a pleading, appearing at a hearing, or formally enrolling as counsel of record. Id., citing, La. C.C.P. art. 1671, Official Comment. Furthermore, under La. C.C.P. art. 6(3), supra., a court's power and authority to render a personal judgment against a party to an action or proceeding must be based upon a party's: 1) submission to the exercise of personal jurisdiction by the court, or 2) waiver of the right to object to jurisdiction by failing to timely file the declinatory exception. Pursuant to La. C.C.P. art. 2593, all exceptions are to be filed prior to trial. International Matex Tank Terminals v. System Fuels, Inc., 398 So.2d 1029, 1031 (La.1981).
Although neither Dr. Summer's brief nor the record indicates whether he was served with process of the original petition within ninety days, Dr. Summer has conceded to the jurisdiction of the Twenty-fourth Judicial District under either prong of La. C.C.P. art. 6(3). He submitted himself to the Court's jurisdiction by making *411 appearances of record at the original petition hearings. Moreover, Dr. Summer waived his right to object to the Twenty-Fourth Judicial District Court's exercise of personal jurisdiction over him by not filing a Declinatory Exception of Lack of Personal Jurisdiction before trial commenced on the original petition. Thus, Dr. Summer is a party to the original petition, but he is not the same quality of party as the Magnolia School defendants because he is a third party defendant whose liability for the death of Wayne Hicks rests upon the Magnolia School defendants being first found liable.
Dr. Summer and Ochsner's final argument is that they will fall prey to double indemnity if the Exception of Lis Pendens is denied and if the Supreme Court denies the writ application in the original petition. Yet, the case law supports the protection of Ochsner and Dr. Summer from double indemnity should they be held liable by the Supreme Court.
Should Ms. Glass win on appeal in her original suit, she will be made totally whole for her damages. The holdings of Weber and Lambert support this analysis, for they grant plaintiffs the right to recover the total amount of damages incurred from the tortfeasor because all of the alleged negligent acts are construed as arising out of the same transaction or occurrence. Ms. Glass would subsequently be barred from recovering additional damages from Ochsner and Dr. Summer once she has been made whole in any Louisiana court. However, granting an Exception of Lis Pendens without weighing all possible factors would greatly harm Ms. Glass and prohibit her from pursuing a viable claim against Dr. Summer and Ochsner in the event the issue of their liability is not addressed by the Supreme Court.

DECREE
For the foregoing reasons, we reverse the judgment of the district court granting the Exceptions of Lis Pendens filed by Alton Ochsner Medical Foundation, Ochsner Clinic L.L.C., and Warren R. Summer, M.D., and hereby remand this matter for a hearing consistent with this opinion.
REVERSED AND REMANDED.
BYRNES, C.J., CONCURS.
MURRAY, J., CONCURS WITH REASONS.
BYRNES, C.J., CONCURS.
I agree with the result reached by the majority. I merely wish to reference the impressive scholarly analysis found in Hy-Octane Investments v. G & B Oil Prod., 97-28 (La.App. 3 Cir. 10/29/97), 702 So.2d 1057, which is worth quoting at some length:
The doctrine of res judicata was substantially changed by La. Acts 1990, No. 521, effective January 1, 1991. Several code articles were amended in order to effectuate this change. Article 1061 was one of the articles that was amended. The purpose of the change in the doctrine of res judicata was to require the plaintiff "to seek all relief and to assert all rights which arise out of the same transaction or occurrence." Comment (a) to La.R.S. 13:4231. This serves the purpose of judicial economy and fairness. The focus is on the transaction or occurrence as opposed to a cause of action. See Comment (a) to La.R.S. 13:4231.
In furtherance of this objective, judicial efficiency is also served "by requiring the defendant through a compulsory reconventional demand to assert all causes of action he may have against the plaintiff that arise out of the transaction or occurrence that is the basis for the *412 plaintiff's action." Comment (a) to Article 1061.
There are no Louisiana cases that discuss the issue of whether two claims that arise out of the same contractual agreement arise out of the same transaction or occurrence.
The term "transaction or occurrence" is used in seven articles of the Code of Civil Procedure. In addition to its use in Article 1061, it is found in Article 425, which deals with preclusion by judgment; it is used in Articles 531 and 532, both dealing with lis pendens; in Article 891, the term enumerates one of the required formalities of a petition; in Article 1071 it defines the parameters of a cross-claim; and in Article 4845, the term helps define the jurisdictional limits of city and parish courts. Another provision, Article 1153, uses the slightly different expression "conduct, transaction, or occurrence" as part of the formula for when an amendment to a pleading relates back for prescription purposes.
Although none of these articles specifically define the expression" transaction or occurrence," they variously equate the term with "the subject matter of the litigation" (Articles 425 & 891), "the subject matter of the principal action" or "principal demand" (Article 1061 & 4845), and "the subject matter either of the original action or a reconventional demand or relating to any property that is the subject matter of the original action" (Article 1071). What the transaction or occurrence is that is the subject matter of the litigation, or the principal demand or action, or the original action, has been determined on a case-by-case basis, according to the annotations under these articles.
Some definitions are available, however. Black's Law Dictionary defines "transaction" as, inter alia, "a broader term than `contract,'" and "a group of facts so connected together as to be referred to by a single legal name; as a crime, a contract, a wrong." Among the definitions of "transaction or occurrence" found in 42 Words and Phrases, Supp. p. 201 (1997), is "whether pertinent facts of different claims are so logically related that issues of judicial economy and fairness mandate that all issues be tried in one suit." The federal courts have given the words "transaction or occurrence" a broad and liberal interpretation in order to avoid a multiplicity of suits. All logically related events entitling a person to institute legal action against another generally are regarded as comprising a "transaction or occurrence." Lasa Per L'Industria Del Marmo Soc. Per Azioni v. Alexander, 414 F.2d 143 (6th Cir. 1969).
Also, the federal courts have discussed the very issue before us in connection with Fed.Rule Civ.P. 13) Rule 13(a) concerns a compulsory counterclaim that must be asserted "if it arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim...." When an article of the Louisiana Code of Civil Procedure is based on a federal rule, decisions of the federal courts can be used for guidance. Scott v. Hosp. Serv. Dist. No. 1, 496 So.2d 270 (La.1986).
In Centennial School Dist. v. Independence Blue Cross, 885 F.Supp. 683 (E.D.Pa.1994), the court held that counterclaims asserted by a health insurer and others against a school district and others for defamation and tortious interference with contractual and business relationships arose out of the "transaction or occurrence" that was the subject matter of the school district's action under antitrust and state law. In that case it was found that all claims related to *413 the contract between the parties and to comments allegedly made regarding termination of the contractual relationship. In U.S. v. Hampton Tree Farms, Inc., 860 F.Supp. 741 (D.Or.1994), the court held that the government's claims for damages for timber buyers' default were compulsory counterclaims in the buyers' action for wrongful termination of contracts and for extensions of automatic termination dates where the contracting officers had issued final default decisions during the pendency of the buyers' action.
In the present case Hy-Octane's claim for breach of the motor fuel supply agreement arises out of the same contract that G & B asserts was wrongfully terminated by Hy-Octane and its successor, Venture Energy. This clearly involves the same transaction or occurrence, the contract, that is the subject matter of G & B's suit. As such, Hy-Octane must assert its claim by a reconventional demand to G & B's suit in Rapides Parish. Judicial efficiency is thereby served.
Hy-Octane also argues that the action is not between "the same parties" since Venture Energy is a defendant in the Rapides Parish action but not involved in the Lafayette Parish action. However, Hy-Octane's argument is misplaced in the present case. La.Code Civ.P. art. 531, dealing with lis pendens, is the article which requires that the suits be between the same parties in the same capacities. This is so because "[w]hen two or more suits are pending in a Louisiana court or courts on the same transaction or occurrence, between the same parties in the same capacities, the defendant may have all but the first suit dismissed...." Article 531. It makes no difference for a compulsory reconventional demand by a defendant if there are additional parties involved. A defendant must assert a reconventional demand if it arises out of the transaction or occurrence of the principal demand by the plaintiff. [Emphasis added.]
Thus, Hy-Octane Investments demonstrates that while LSA-R.S. 13:4231 (res judicata) and LSA-C.C.P. art. 1061 (compulsory counterclaims) require a party to assert certain claims arising out of the same transaction or occurrence or lose them, there is no analogous requirement in LSA-C.C.P art. 531 (lis pendens) requiring the plaintiff to assert in one suit all claims arising out of the same occurrence or transaction against other parties in all capacities. It would unquestionably serve the interests of fairness and judicial economy in the instant case were the plaintiff required, if procedurally possible, to assert her claims against Ochsner and Dr. Summer in the original Jefferson Parish suit, but nothing in LSA-C.C.P. art. 531 requires her to do so. Therefore, until the legislature or the Supreme Court acts to broaden the scope of LSA-C.C.P. art. 531, I must resign myself to a procedure that through clever advocacy could conceivably result in the possibility of the plaintiff in the instant litigation having multiple bites at the same apple. Moreover, in a case involving res judicata which, as pointed out correctly by the majority, has basically the same requirements as lis pendens, this Court made the point that the principle of judicial economy is not always of paramount importance. Fine v. Regional Transit Authority, 95-2603 (La.App. 4 Cir. 6/26/96), 676 So.2d 1134,1137. Of even greater relevance to the instant case is Steptoe v. Lallie Kemp Hosp., 93-1359 (La.3/21/94), 634 So.2d 331, where the Supreme Court held that res judicata did not apply under procedural facts very similar to those of the instant case: The initial *414 suit was for negligent operation of a vehicle and the second suit was for medical malpractice arising during the course of the automobile tort victim's treatment.
For the foregoing reasons, I respectfully concur.
MURRAY, J., CONCURS WITH REASONS.
I concur in the reversal of the trial court's rulings and in the remand, but for different reasons than those expressed in the majority opinion. The "pending" action that was the basis for the trial court's maintenance of the exceptions of lis pendens is the third party demand asserted by the Magnolia School against Dr. Summer and Ocshner in the suit plaintiff, Ms. Glass, filed in Jefferson Parish against the Magnolia School and several of its employees prior to her filing of the instant suit. However, the trial court's granting of the exceptions is now moot because, contrary to the facts recited in the majority opinion, the Jefferson Parish action is no longer pending, but has proceeded to final judgment, apparently without the third party demand having been judicially resolved.
The pertinent facts, as ascertained from the record in the instant case, as well as from the published opinions of the Fifth Circuit and the Louisiana Supreme Court in the Jefferson Parish case, are as follows. The Jefferson Parish action was tried to a jury in June of 2001, which found no negligence on the part of any of the defendants. Glass v. Magnolia School, Inc., 01-1209, p. 2 (La.App. 5 Cir. 3/13/02), 815 So.2d 143, 146. After the trial court denied her motion for judgment notwithstanding the verdict, Ms. Glass appealed to the Fifth Circuit. Id. On March 13, 2002, the Fifth Circuit reversed the trial court, found liability on the part of the Magnolia School, and awarded damages to the plaintiff. Most pertinent to our inquiry, however, is that the Fifth Circuit opinion does not mention the existence of a third party demand by the Magnolia School against the defendants herein. Moreover, the Fifth Circuit does not remand the case for trial of the third party demand; the decree is "Reversed and Rendered." Id. at p. 19, 815 So.2d at 156. The Magnolia School applied for writs to the Supreme Court from this decision of the Fifth Circuit, and on June 7, 2002, the Court denied writs, thus concluding the Jefferson Parish action. See Glass v. The Magnolia School, Inc., 02-1048 (La.6/7/02), 818 So.2d 776.
From the record we have, it is impossible to determine whether the third party demand still existed in the Jefferson Parish lawsuit at the time that suit was tried in June, 2001, or at the time the Orleans Parish Civil District Court granted the exceptions of lis pendens in the instant case in September, 2001. The four-page transcript from the September 7, 2001, hearing on the exceptions merely reflects that counsel for Dr. Summer told the trial judge:
We were forced by the judge and by plaintiff attorney to go to all the pretrials, everything. We've gone to all the hearings. We're over there. Whether we're third party defendants, whether we're direct defendants, it's just a red herring. We are the parties in that suit. It is over there. [sic]
Regardless of the status of the third party demand at the time the exceptions in the instant case were heard, it apparently was not part of the Jefferson Parish action at the time of the appeal to the Fifth Circuit, which neither addressed the issue, nor remanded the case for resolution of that issue. Absent such a remand, the Supreme Court's denial of writs ended the Jefferson Parish case. Without a pending case in Jefferson Parish, the exceptions of lis pendens are moot. For this reason *415 alone, without expressing an opinion as to the merits of the exceptions during the pendency of the third party demand, I would vacate the trial court's judgment. Accordingly, I concur in the reversal and remand.