**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**SUNTIP COMPANY, Defendant–Appellee.**

**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**HAMPTON TREE FARMS, INC.,**
**Defendant–Appellee.**

**Nos. 93–36147, 94–35977.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 6, 1995.

Decided May 6, 1996.

---

Allen L. Lear, United States Department of Justice, Washington, D.C., with whom Gerald M. Alexander and Sean P. Murphy appeared on the briefs, Riley J. Atkins, Assistant United States Attorney, Portland, Oregon, for plaintiff–appellant.

John P. Bledsoe, Lane, Powell, Spears & Lubersky, Portland, Oregon, for defendants–appellees.

Before: CANBY, REINHARDT, and JOHN T. NOONAN, Jr. * Circuit Judges.

CANBY, Circuit Judge.

These cases arise from disputes over several federal timber sale contracts entered many years ago, separately, by Hampton Tree Farms, Inc., and Suntip Company. The controversy between those two firms and the government has passed through several tribunals and acquired an exquisitely byzantine complexity. The present actions, which we may hope will be the last, were brought by the government to enforce decisions of its contracting officers holding Hampton and Suntip liable for breach of their contracts.

Hampton and Suntip asserted two defenses that are the subject of these appeals. First, they argued that the government's claims were barred under the doctrine of res judicata because they should have been asserted as compulsory counterclaims in earlier litigation brought by Hampton and Suntip. Second, they contended that the government's claims were barred by the six-year statute of limitations, 28 U.S.C. § 2415.

In the Hampton action, the district court held that nine of the government's eleven claims were barred by limitations, and that the remaining two were barred for failure to assert them as compulsory counterclaims in earlier litigation. In the Suntip action, the district court held that all claims were barred for failure earlier to assert them as compulsory counterclaims. The government appeals both decisions.

---

* Judge Tang was originally a member of this panel and heard argument in this case. He died prior to circulation of this opinion, and pursuant to General Order 3.2(g), Judge Noonan was drawn as a replacement. Judge Noonan was provided with a tape of the oral argument as well as the briefs and other materials received by the other members of the panel.

### Background

Both issues on appeal—res judicata and limitations—are affected significantly by the procedural framework established by Congress for resolution of government contract disputes, and by earlier litigation in several forums. It is unfortunately necessary, therefore, to describe these matters, as well as the underlying facts, in some detail.

Beginning in 1978, the United States Forest Service awarded various contracts to Hampton and Suntip for the harvest of timber in National Forests within Oregon. The Forest Service awarded Hampton eleven contracts to cut timber in the Siuslaw National Forest,[1] and awarded Suntip nine contracts to cut timber in four different National Forests.[2] Each contract contains a "termination date" by which time the companies were obliged to cut, remove, and pay for the timber. Neither company performed by the termination dates specified in the contracts. Between March, 1986, and April, 1987, the Forest Service notified Hampton and Suntip that their contracts were in default.

Each contract contains a "Failure to Cut" provision, which states:

In the event of (a) termination for breach, or (b) Purchaser's failure to cut designated timber on portions of Sale Area by Termination date, Forest Service shall appraise remaining Included Timber ... Such appraisal shall be made with the standard Forest Service method in use at time of termination.

Damages due the United States for Purchaser's failure to cut and remove such timber ... shall be the amount by which Current Contract Value plus the cost of resale ... exceeds the resale value at new Bid Rates. If there is no resale, damages due shall be determined by subtracting the value established by said appraisal from the difference between Current Contract Value and Effective Purchaser Credit.

### 1. The Contract Disputes Act

All of the contracts were subject to the Contract Disputes Act, 41 U.S.C. §§ 601–613.[3] Under that Act, the government's claims against the timber companies must first be submitted for decision by a contracting officer. 41 U.S.C. § 605(a). The Act further provides:

The contracting officer's decision on the claim shall be final and conclusive and not subject to review by any forum, tribunal, or Government agency, unless an appeal is timely commenced as authorized by this chapter.

§ 605(b). One authorized method of appeal is for the contractor, within 90 days of receipt of the contracting officer's decision, to appeal to the agency (here the Department of Agriculture) board of contract appeals. § 606. "A contractor may appeal the board's decision to the Court of Appeals for the Federal Circuit." § 607(g)(1)(A). An alternative method is for the contractor, within twelve months after receipt of the contracting officer's decision, to bring an action for review in the Court of Federal Claims. § 609(a)(1), (3). Either party may appeal a decision of the Court of Federal Claims to the Federal Circuit. 28 U.S.C. § 1295(a)(3).

### 2. The Contracting Officers' Decisions

In the cases before us the government proceeded to follow the steps prescribed by the Act. Once it had determined that Hamp-

---

1. The dates these contracts were awarded are as follows: Yoncalla Redo 78: October 18, 1978; Slick Falls 79: January 18, 1979; Erickson 8–79: September 7, 1979; Cascade Panther 79: September 11, 1979; Blodgett 008: June 18, 1980; Powder Creek 80: September 30, 1980; Heceta 217: April 2, 1981; Erickson Rock 81: July 29, 1981; Conklin 3: July 29, 1981; Battle Bays: September 17, 1981; and Beamer 213: January 8, 1982.

2. The dates these contracts were awarded are as follows: Lake: February 5, 1979; Arbor: June 24, 1980; Bathtub: September 30, 1980; Upper Deer Leave: November 18, 1980; Born: January 14, 1981; Buckhead: January 14, 1981; Jewell: March 16, 1981; Whiskey Relog: June 29, 1981; Panther Fork: December 3, 1981.

3. All but one of the contracts expressly provided that the Contract Disputes Act would govern resolution of any disputes. The exception was Hampton's Yoncalla Redo 78 contract, which preceded the Contract Disputes Act, but Hampton elected to have disputes regarding this contract processed under the Contract Disputes Act as well.

ton and Suntip had defaulted, each claim was submitted to a contracting officer who calculated the damages the companies owed the government under the formula stated in the contracts. Between July, 1987, and May, 1988,[4] contracting officers issued "Final Decisions" stating the damages that Hampton and Suntip owed to the government by reason of their breach of each contract.

### 3. The Declaratory Judgment Actions

A few years earlier, when it had become apparent that many timber companies could not carry out harvesting contracts without a loss, the Forest Service adopted a Multi–Sale Extension Policy, which allowed participating companies an additional five years to complete their contracts. *See* 48 Fed.Reg. 54812 (1983). In return, the participating companies agreed to request no further extensions and to certain contract modifications. To qualify, companies were required to submit their Multi–Sale Extension Plans by February 15, 1984. Neither Hampton nor Suntip submitted Plans by this deadline, because they relied on an injunction issued by the district court in other litigation, *North Side Lumber Co. v. Block,* No. 83–490 (D.Or. Feb. 15, 1984).

The district court's injunction in *North Side* was vacated by this court on February 20, 1985.[5] *North Side Lumber Co. v. Block,* 753 F.2d 1482 (9th Cir.), *cert. denied,* 474 U.S. 919, 931, 106 S.Ct. 248, 265, 88 L.Ed.2d 256, 271 (1985). Many of the companies in the plaintiff class settled with the Forest Service, and were allowed to file late Multi–Sale Extension Plans. Hampton and Suntip did not settle. In May 1985, they both filed Multi–Sale Extension Plans, which the Forest Service rejected as untimely.

Hampton responded in June 1985 by bringing an action in the district court for declaratory and injunctive relief requiring the Forest Service to accept their Multi–Sale Extension Plans. After receiving several contracting officers' decisions, Hampton filed an amended and supplemental complaint on April 7, 1988, alleging wrongful termination of the contracts and related claims. In answering the Supplemental Complaint on April 27, 1988, the United States did not assert a counterclaim for the damages Hampton owed it for breaching the contracts. In October, 1989, Hampton filed a Supplement to its First Amended Complaint, and again in answering on November 17, 1989, the government did not assert a counterclaim against Hampton.

On December 10, 1987, Suntip initiated an action in district court, seeking declaratory and injunctive relief similar to that sought by Hampton. In April 1988, the government answered the complaint without asserting a counterclaim for the damages Suntip owed it for breaching the contracts. Suntip filed a supplement to its complaint on October 30, 1989. The government filed an answer to Suntip's supplemental pleading on November 17, 1989, again without asserting its damages claims as compulsory counterclaims.

The district court granted summary judgment for Hampton and Suntip, holding that Hampton and Suntip's Plans had been timely, even though they were submitted past the regulatory deadline, because they were submitted while the *North Side* injunction was still in effect. *Hampton Tree Farms, Inc. v. Block,* No. 85–1085, 1987 WL 115596 (D.Or. Apr. 20, 1987); *Suntip Co. v. Yeutter,* No. 87–1360, 1990 WL 357213 (D.Or. May 7,

---

**4.** Contracting officers issued Final Decisions regarding Hampton's contracts on the following dates: Conklin 3: March 10, 1987; Beamer 213: April 21, 1987; Erickson 8–79: July 8, 1987; Battle Bays: August 3, 1987; Powder Creek 80: August 24, 1987; Heceta 217: November 4, 1987; Cascade Panther 79: December 7, 1987; Blodgett 008: January 4, 1988; Slick Falls 79: March 17, 1988; Erickson Rock 81: March 29, 1988; and Yoncalla Redo 78: May 31, 1988.

Contracting officers issued Final Decisions regarding Suntip's contracts on the following dates: Panther Fork: July 23, 1987; Jewell: Au-

gust 6, 1987; Upper Deer Leave: August 10, 1987; Lake: August 19, 1987; Arbor: September 17, 1987; Born: December 3, 1987; Buckhead: December 23, 1987; Whiskey Relog: March 4, 1988; and Bathtub: May 18, 1988.

**5.** Due to various delays and an unsuccessful petition for certiorari, this court's mandate in *North Side* did not reach the district court until December 2, 1985. At that point, the injunction was lifted and the government was free to enforce its contracts by issuing notices of default and proceeding with decisions of contracting officers.

1990). On appeal, the cases were consolidated and this court reversed, holding that, once the *North Side* injunction was held to be void, rights acquired under it could not be enforced. *Hampton Tree Farms, Inc. v. Yeutter,* 956 F.2d 869, 871 (9th Cir.), *cert. denied,* 506 U.S. 816, 113 S.Ct. 56, 121 L.Ed.2d 25 (1992). We also held that the Forest Service's refusal to accept Hampton's and Suntip's late Plans was not arbitrary, because the other applicants whose untimely Plans had been accepted had settled with the Forest Service, and Hampton and Suntip had not. *Id.* at 872.

### 4. The Court of Federal Claims Actions

Hampton and Suntip did not stake everything on their action in district court for declaratory and injunctive relief. Between March 4, 1988 and May 24, 1989, they filed actions in the Court of Federal Claims contesting the various decisions of the contracting officers.[6] The actions all were filed within the requisite one year of the contracting officers' decisions. *See* 41 U.S.C. § 609(a)(3). Shortly after filing the first action, Hampton asked the Court of Federal Claims to stay its hand until the action in district court for declaratory and injunctive relief had been resolved. The Court of Federal Claims granted the stay, and later extended it to await our decision on appeal of the district court's decision. Suntip also sought and was granted a stay.

Meanwhile, on May 3, 1988, the government moved to dismiss one of Hampton's suits in the Court of Federal Claims on the ground that 28 U.S.C. § 1500 deprived that court of jurisdiction over the claim. Subsequently, the Court of Federal Claims applied this motion to the remainder of Hampton's suits and all of Suntip's suits. Section 1500 provides that

[t]he United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States....

The scope and effect of section 1500 was at the time a matter of some uncertainty and controversy, and the issue eventually found its way to the Supreme Court in *Keene Corp. v. United States,* 508 U.S. 200, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993). The Court of Federal Claims extended its stay in the Hampton and Suntip cases to await the *Keene* decision.

*Keene* accepted the historical meaning of section 1500 as depriving the Court of Federal Claims of jurisdiction when there is pending in another court a claim against the United States "based on substantially the same operative facts ..., at least if there was some overlap in the relief requested." *Keene,* 508 U.S. at 212, 113 S.Ct. at 2042–43. The Court rejected a contention that the Court of Federal Claims was deprived of jurisdiction under section 1500 only if the other, pending action could have been pleaded in the Court of Federal Claims. *Id.* at 212–14, 113 S.Ct. at 2043.

Even before the Supreme Court decided *Keene,* Suntip sent a letter to the Court of Federal Claims stating that it had decided to acquiesce in the government's motion to dismiss. Accordingly, on November 5, 1992, the Court of Federal Claims dismissed Suntip's cases for lack of subject matter jurisdiction. On July 14, 1993, after the Supreme Court's *Keene* decision was handed down, the Court of Federal Claims dismissed Hampton's actions pursuant to 28 U.S.C. § 1500.

### 5. The Present Actions

In June 1993, after all of Suntip's prior litigation had ended, the United States filed

**6.** Hampton filed actions in the Court of Federal Claims on the following dates: Conklin 3: March 4, 1988; Beamer 213: April 15, 1988; Erickson 8–79: June 30, 1988; Battle Bays: July 20, 1988; Powder Creek 80: August 12, 1988; Heceta 217: October 20, 1988; Cascade Panther 79: November 22, 1988; Blodgett 008: December 15, 1988; Slick Falls 79: February 23, 1989; Erickson Rock 81: March 15, 1989; and Yoncalla Redo 78: May 24, 1989.

Suntip filed suits in the Court of Federal Claims on the following dates: Panther Fork: July 11, 1988; Jewell: July 20, 1988; Upper Deer Leave: July 20, 1988; Lake: August 9, 1988; Arbor: August 25, 1988; Born: November 22, 1988; Buckhead: December 15, 1988; and Bathtub: May 9, 1989.

its Complaint on Claim for Debt in district court, seeking to enforce its contracting officers' decisions against Suntip. In August 1993, after Hampton's actions in the Court of Federal Claims were dismissed, the government filed a similar action against Hampton.

As we have already related, the district court ruled against the government on two grounds: (1) res judicata, because the government had failed to ˙assert its claims in Hampton's and Suntip's earlier district court actions for declaratory and injunctive relief, and (2) limitations. We now address those rulings.

### Res Judicata—Compulsory Counterclaim

■ It is Hampton's and Suntip's contention, and it apparently was the view of the district court, that Rule 13(a) of the Federal Rules of Civil Procedure [7] required the government to litigate the *merits* of these contracting disputes as a compulsory counterclaim in district court. We reject that contention because its acceptance would frustrate Congress's purposes in enacting the Contract Disputes Act.

■ The government could not take legal action on its contract claims without first making them "the subject of a decision by the contracting officer." 41 U.S.C. § 605(a); *Sharman Co. v. United States,* 2 F.3d 1564, 1568–69 & n. 6 (Fed.Cir.1993). Congress could scarcely have been clearer in legislating that contracting officers' decisions "shall be final and conclusive *and not subject to review by any forum, tribunal,* or Government agency, unless an appeal or suit is timely commenced *as authorized by this chapter.*" 41 U.S.C. § 605(b) (emphasis added). The two forms of appeal authorized by this chapter are appeals to an agency board of contract appeals or an action in the Court of Federal Claims. *Id.,* §§ 606, 609(a)(1). The intent behind this scheme is to confine these government contract disputes to expert tribunals created expressly for that purpose.

See 1978 U.S.C.C.A.N. 5235 *et seq.* That intent is defeated if a contracting party may, by filing a declaratory judgment action in district court, compel the government to litigate the merits of its contracting officers' decisions in district court. *See Ingersoll–Rand Co. v. United States,* 780 F.2d 74, 78 (D.C.Cir.1985) (Contract Disputes Act requires action challenging termination of government contract to be brought in expert Court of Claims, not district court).

The Federal Rules of Civil Procedure cannot be construed to expand the jurisdiction of the district courts. Fed.R.Civ.P. 82. They cannot create jurisdiction where none exists. *United States v. Sherwood,* 312 U.S. 584, 589–90, 61 S.Ct. 767, 771, 85 L.Ed. 1058 (1941). Because Congress has required contracting officers' decisions to be challenged only before a Board of Contract Appeals or in the Court of Federal Claims, the compulsory counterclaim provision of Rule 13(a) cannot compel the government to litigate the merits of its contract claims in the district court.

It follows that the district court erred in ruling that the government was required to litigate the merits of its disputes in district court. That point does not quite dispose of the entire res judicata question, however.

The government contends that its present action is simply one to enforce final decisions of its contracting officers. Because neither Hampton nor Suntip appealed to the Department of Agriculture's Board of Contract Appeals, and because their actions in the Court of Federal Claims have been dismissed for lack of jurisdiction, the contracting officers' decisions are now "final and conclusive and not subject to review by any forum." § 605(b). For most practical purposes, then, the government's present suit is similar to a suit on a judgment, because the merits of the officers' decisions are not subject to attack. *See Seaboard Lumber Co. v. United States,* 903 F.2d 1560, 1562 n. 4 (Fed.Cir.1990)

---

7. Fed.R.Civ.P. 13(a) provides:

A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing par-

ty's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action....

("[t]he government may obtain a judgment on the basis of such [contracting officer's] decision in a state or federal court without litigating the merits"), *cert. denied,* 499 U.S. 919, 111 S.Ct. 1308, 113 L.Ed.2d 243 (1991).

The question then arises whether the government was required to file these actions to enforce its contracting officers' *final* decisions as compulsory counterclaims in Hampton's and Suntip's actions for declaratory and injunctive relief. We conclude that it was not, because any such action would have been premature. The government's present enforcement action depends upon its contracting officers' decisions being final, conclusive, and not subject to further challenge on the merits. The contracting officers' decisions are final and conclusive "unless an appeal or suit is timely commenced as authorized" by the Contract Disputes Act. § 605(b). Under the Act, Hampton and Suntip had up to one year from the date of each contracting officers' decision to challenge it in the Court of Federal Claims. § 609(a)(3). At the time the government filed its answers to the supplemental pleadings in Hampton's and Suntip's district court actions, all of the contracting officers' decisions either were already the subject of suits in the Court of Federal Claims (and were thus within the literal exception of Rule 13(a) for claims pending in another court), or were susceptible to such suits because the one-year period to bring them had not expired. With the finality of the contracting officers' decisions not yet established, the government could not be compelled to enforce them as "final" decisions in the district court. The contracting officers' decisions might be changed or reversed, but only by one of the two tribunals authorized by the Contract Disputes Act, not by the district court. We conclude that the government was not required to assert its enforcement action as a compulsory counterclaim in Hampton's and Suntip's district court actions for declaratory and injunctive relief.[8]

### Statute of Limitations

 The district court held that the government's claims against Hampton were barred by limitations, and Suntip also urges limitations in support of the district court's judgment in its favor. The statute in issue is 28 U.S.C. § 2415(a), which provides:

> every action for money damages brought by the United States ... which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later....

As the district court recognized, there is no doubt that this statute applies to actions by the government when it sues directly on a contract claim. *United States v. Westerband–Garcia,* 35 F.3d 418, 421 (9th Cir.1994); *United States v. Gavilan Joint Community College Dist.,* 849 F.2d 1246, 1249 (9th Cir. 1988). The government contends, however, that its action to enforce a final contracting officers' decision is not a suit on the underlying contract, but is comparable to a suit on a judgment. A judgment is not a "contract" subject to section 2415. *See United States v. Southern Fabricating Co.,* 764 F.2d 780, 782 (11th Cir.1985) (consent judgment); *United States v. Hannon,* 728 F.2d 142, 145 (2nd Cir.1984) (default judgment).

The government's argument is not without force, but we conclude that it is not consistent with the language of section 2415. The final contracting officers' decisions are comparable to judgments because they are not now open to challenge on the merits, but they are not in fact judgments. Indeed, the purpose of this action is to reduce the orders to judgment. Section 2415 requires that an action by the government "founded upon any contract" be brought within six years or "within one year *after final decisions have been rendered in applicable administrative proceedings.*" (Emphasis supplied). This language appears to contemplate actions of exactly the type that the government is now

---

8. Our resolution of this issue makes it unnecessary for us to address the government's additional argument that its claim for enforcement of the contracting officers' decisions, in which the merits are not at issue, does not arise from the same transaction or occurrence as the underlying contract claims that were the subject of Hampton's and Suntip's district court actions.

bringing. We conclude that section 2415 applies.

■■■ We agree with the government, however, that time does not begin to run for an enforcement action until the contracting officer renders his or her decision. Under the Contract Disputes Act, the government cannot take legal action on its claim until it first makes it "the subject of a decision by the contracting officer." § 605(a); *Sharman*, 2 F.3d at 1568–69 & n. 6. Time cannot run against the government until it is procedurally possible for it to sue. *See Crown Coat Front Co. v. United States*, 386 U.S. 503, 511, 87 S.Ct. 1177, 1181–82, 18 L.Ed.2d 256 (1967) (action against government accrues under section 2401 only upon completion of required administrative process).

Hampton and Suntip rely on *United States v. Gavilan Joint Community College Dist.*, 849 F.2d 1246, 1249 (9th Cir.1988), in which we stated that "a cause of action generally accrues when a plaintiff knows or has reason to know of the injury that is the basis of the action." They also rely on the 1994 amendments to the Contract Disputes Act, which modified section 605(a) so that it now states:

> All claims by the government against a contractor relating to a contract shall be the subject of a decision by the contracting officer.... [E]ach claim by the government ... *shall be submitted within 6 years after the accrual of the claim.*

(Emphasis added.) Hampton and Suntip point out that this statute makes no sense if a claim does not accrue until the contracting officer decides.[9]

Hampton and Suntip fail to differentiate, however, between an action by the government on the underlying contract and an action like the present one, to enforce decisions of contracting officers. A claim on the *contract* may well accrue when the government is aware of the breach and injury, and it

must submit that claim to a contracting officer within six years of accrual. An action to enforce a contracting officer's decision, however, cannot accrue until the decision is made because suit cannot commence before that time.[10]

When the six-year limitation period of section 2415 is counted from the date of the contracting officers' decisions, the government's enforcement action against Hampton is timely as to all except two decisions. The enforcement action against Suntip is timely for all decisions.

■■■ The government argues, finally, that even the two decisions that are barred under the six-year provision of section 2415 may properly be enforced, because they fall within the alternative provision permitting an action to be brought "within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law." § 2415(a). The government brought all of its enforcement actions within one year of the dismissal of Hampton's and Suntip's actions in the Court of Federal Claims.

■■■ Hampton and Suntip contend that an action in the Court of Federal Claims is not an "administrative proceeding" within the meaning of section 2415(a); only an appeal to the Board of Contract Appeals qualifies. They rely, inter alia, on *United States v. Dawkins*, 629 F.2d 972, 975 (4th Cir.1980), in which the Fourth Circuit held that an action in the Court of Claims after an appeal to a Board of Contract Appeals did not qualify as an "administrative proceeding" under section 2415. *Dawkins*, however, did not apply the Contract Disputes Act. It also preceded the Federal Courts Improvement Act of 1982, Pub.L. 97–164, 96 Stat. 25 (1982), which changed the Court of Claims from an Article III to an Article I court, and which allowed contractors to challenge a contracting offi-

---

9. Hampton and Suntip recognize that the 1994 amendments do not apply to this case; they offer the amendment only to show the common meaning, accepted by Congress, of "accrual of the claim."

10. The government contends that an action to enforce a contracting officer's decision should not accrue until 30 days after the officer's deci-

sion, because that is when the contractor is ordered to pay. *See Westerband–Garcia*, 35 F.3d at 422 ("[t]he right of action accrues on the date when the damages to be paid to the government are due"). We need not address this point, because the timeliness of no claim in this case depends on the additional 30 days.

cer's decision *either* before a Board of Contract Appeals *or* in the now-denominated Court of Federal Claims. These are now parallel avenues of review, and there is no reason to treat them differently. In our view, the reference in section 2415 to "applicable administrative proceedings required by contract or by law" must now be read to include a suit in the Court of Federal Claims challenging a decision of a contracting officer. As the present case indicates, proceedings in the Court of Federal Claims can be very lengthy and are not within the control of the government. The decision of that court can change or reverse the contracting officer's decision.[11] If the alternative clause of section 2415 is not applied to extend limitations, it is possible that the government's time to bring an enforcement action will expire before it has a final decision to enforce. We cannot accept such an impractical interpretation of section 2415 and the Contract Disputes Act.[12] We therefore conclude that the alternative clause of section 2415(a) applies to proceedings in the Court of Federal Claims, with the result that all of the government's claims are timely.

### The Absence of Jurisdiction in the Court of Federal Claims

Hampton and Suntip contend that no effect should be given the proceeding in the Court of Federal Claims, either to forestall the need to file a compulsory counterclaim or to serve as an alternative measure of limitations, because that Court was without jurisdiction to hear Hampton's and Suntip's challenges to the contracting officers' decisions. *See* 28 U.S.C. § 1500; *Keene,* 508 U.S. at 210–14, 113 S.Ct. at 2042–43. To Hampton and Suntip, there is an unfair lack of symmetry in holding, as we did in *Hampton Tree Farms, Inc. v. Yeutter,* 956 F.2d at 871, that they were not entitled to rely on the void *North Slope* injunction, when the government here is permitted to rely on a void Court of Federal Claims proceeding to escape the effects of res judicata and limitations.

Despite the surface plausibility of this contention, there are material differences between our ruling in *Hampton Tree Farms, Inc. v. Yeutter* and our ruling today. In *Hampton,* Hampton and Suntip sought to rely on the rights conferred by an injunction sought and obtained by their class. We relied on established precedent to the effect that a party is not entitled to the benefits of an injunction to which it was never entitled. *See United States v. United Mine Workers,* 330 U.S. 258, 295, 67 S.Ct. 677, 696–97, 91 L.Ed. 884 (1947); *Latrobe Steel Co. v. United Steelworkers of America,* 545 F.2d 1336, 1346 (3d Cir.1976).

In the present case, the United States did not seek review of the contracting officers' decisions in the Court of Federal Claims; Hampton and Suntip did. The government promptly moved to dismiss; Hampton and Suntip sought and obtained stays. During

---

**11.** Indeed, the contracting officer's decision loses its finality when an action challenging it is filed in the Court of Federal Claims. 41 U.S.C. 605(b) ("The contracting officer's decision on the claim shall be final and conclusive ... unless an appeal is timely commenced"). The officer's decision then becomes final only when the Court proceeding is concluded. It is therefore logical that the one-year limitation of section 2415 begins to run at that point, even if the contracting officer's decision itself is the relevant "final decision[ ] rendered in applicable administrative proceedings" under section 2415.

**12.** The government asserts that its regular practice is not to attempt to enforce contracting officers' decisions until a proceeding in the Court of Federal Claims has concluded or the time for bringing such a suit has expired. In the one case Hampton and Suntip cite in which the government attempted to enforce a contracting officer's decision in district court before the twelve months to file suit in the Court of Federal Claims had passed, the Eighth Circuit expressed "no view" as to whether the statute of limitations would have continued to run while the contractor's challenges were before the Court of Federal Claims. *United States v. BLH, Inc.,* 773 F.2d 232, 234 (8th Cir.1985). Instead, it held that the district court should have stayed the government's action to enforce the contracting officer's decision pending resolution of the challenge to that decision before the Court of Federal Claims. *Id.* The Eighth Circuit's decision is consistent with the view that a district court cannot enforce the contracting officer's decision until a challenge to that decision in the Court of Federal Claims is resolved. The Court of Federal Claims proceedings may, then, be treated as required proceedings when the contractor elects to sue in the Court of Federal Claims.

the period when the controversial question of the jurisdiction of the Court of Federal Claims was being resolved, the United States as a practical matter could not enforce the contracting officers' decisions: on the face of section 605(b) of the Contract Disputes Act, those decisions were not "final" because a suit had been timely commenced and was pending in the Court of Federal Claims. Thus the United States does not seek to obtain any benefits under a ruling it sought from the Court of Federal Claims for which there was no jurisdiction. Instead, it asks us to recognize the fact that, while the Court of Federal Claims proceeding was pending and jurisdiction was being disputed, the government could not practicably bring an enforcement action in district court. For reasons we have already stated, the relief sought by the government is supported by the Contract Disputes Act and section 2415. In granting it, we see no true inconsistency with our prior ruling in *Hampton Tree Farms, Inc. v. Yeutter*.

### Conclusion

Because neither Fed.R.Civ.P. 13(a) and the principles of res judicata, nor the statute of limitations, 28 U.S.C. § 2415(a), bars the government's actions, we reverse the summary judgments of the district court. The government asserts that, because we have ruled that its contracting officers' decisions may not be challenged on the merits in this proceeding, we must order summary judgment in favor of the government. Hampton and Suntip argue, however, that they have asserted defenses not going to the merits of the contracting officers' decisions. They have not explained what those defenses may be, and we leave it to the district court to determine whether such defenses may be asserted without reference to the merits of the contracting officers' decisions. If not, the government is entitled to judgment.

**REVERSED AND REMANDED.**

NOONAN, Circuit Judge, dissenting:

"What is sauce for the gander is sauce for the goose." This ancient adage has apparently no application when the gander is an agency of the United States and the geese

are two corporations engaged in the timber industry.

This court has held that these two plaintiffs had no rights under an injunction issued by the district court, which this court later found to have been issued invalidly. *Hampton Tree Farms, Inc. v. Yeutter*, 956 F.2d 869, 871 (9th Cir.) *cert. denied*, 506 U.S. 816, 113 S.Ct. 56, 121 L.Ed.2d 25 (1992). But the majority in this case holds that a proceeding in the Court of Federal Claims, which had no jurisdiction of the proceeding, absolves the United States from its obligation under Federal Rule of Civil Procedure 13 to have filed compulsory counterclaims. It is difficult, if not impossible, to understand what the relevant difference is in the situation of the timber companies relying on a void injunction and the United States relying on a proceeding which was also void because there was no jurisdiction whatsoever.

The distinction that the majority offers is that the timber companies initiated the injunction proceeding, while the United States was not the initiator of the proceeding in the Court of Federal Claims. But in each case what is used as a legal basis is a legal nullity. *See Morongo Band of Mission Indians v. Calif. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir.1988) (holding that a court without jurisdiction is without power to do anything except to dismiss the case and that any other order issued by the court would be a nullity), *cert. denied*, 488 U.S. 1006, 109 S.Ct. 787, 102 L.Ed.2d 779 (1989); *see also In re Establishment Inspection of Hern Iron Works*, 881 F.2d 722, 726–27 (9th Cir.1989) (stating that any court order issued without jurisdiction is a nullity or "nothing at all"); *Watts v. Pinckney*, 752 F.2d 406, 409–10 (9th Cir.1985) (holding that a judgment by a court without jurisdiction is void or a legal nullity). The plaintiffs in the injunction case were ultimately treated as though they should have known all along that they had no rights. I see no reason why the United States should be treated differently.

Under Federal Rule of Civil Procedure 13(a), the government was required to state any claim as a counterclaim which existed at the time Hampton and Suntip served it with their pleadings, in June 1985 and December

1987 respectively, and their amended pleadings in April 1988 and October 1989 respectively. Fed.R.Civ.P. 13(a). The government did not do so. The exception to the compulsory counterclaim requirement for instances in which "at the time the action was commenced the claim was the subject of another pending action" does not apply here. *Id.* Hampton's action in district court commenced in June 1985; Suntip's in December 1987. In June 1985, the government's claim against Hampton was not the subject of another pending action. Nor was its claim against Suntip the subject of another pending action in December 1987. An action is one that is commenced in court. Fed. R.Civ.P. 2, 3. Consideration of a contract dispute by a contracting officer doesn't cut it. The Court of Federal Claims did not consider Hampton's and Suntip's challenges until after the time they commenced their actions in district court. Nor did the government even raise any counterclaim for damages in the Court of Federal Claims. In short, the government's counterclaim was never the subject of a pending action in that court. Under Rule 13(a), the government is not saved from its failure to assert its counterclaims.

The majority takes the position that the United States did not have to file its counterclaims "because any such action would have been premature." The majority opinion mischaracterizes the government's claims as an enforcement action dependent upon a final decision of a contracting officer that is not subject to further attack on the merits. The government's claims stem from its contracts. The Contract Disputes Act does not create these claims. *See* 41 U.S.C. §§ 601–613; *In re Remington Rand Corp.,* 836 F.2d 825, 830–31 (3d Cir.1988) (holding that the Contract Disputes Act creates no substantive contractual rights but instead "assumes the existence of a traditional contractual cause of action"). The government's claims arose from Hampton's and Suntip's breach of contract dating back to their failure to meet the performance deadlines sometime before 1986. The finality and unreviewability of the contracting officers' decisions on the merits did not give the government any new claims. Once Hampton and Suntip breached the contracts, the government had a right to payment. This right to payment was based on the breached contracts, not the finality and unreviewability of the contracting officers' decisions. Such finality was not in any way necessary for the government to assert its counterclaims. For example, had the Court of Federal Claims had jurisdiction over Hampton's and Suntip's complaints, the government's claims for damages stemming from the breach of contract could have been asserted as a counterclaim for damages in the Court of Federal Claims, notwithstanding any lack of finality in the contracting officers' decisions or the fact that those decisions were still reviewable. *See* 28 U.S.C. § 2508; *see, e.g., Insurance Co. of North America v. United States,* 951 F.2d 1244, 1245 (Fed.Cir. 1991). Likewise, in its response to Hampton's and Suntip's complaints in district court, the government could have easily asserted a claim for its right to payment under the contract and noted that the liability would be established once the contracting officers' decisions become final. Additional pleading in response to Hampton's and Suntip's complaints filed in the district court would hardly have imposed a burden on the government and would have in no way frustrated the purpose of the Contract Disputes Act in settling the merits of disputes over government contracts of an executive agency.

The reason why the actions are asserted to have been premature was because of the void proceedings in the Court of Federal Claims. Those proceedings were before a court whose jurisdiction is as relevant as if the United States had been sued by the plaintiffs in the International Court at the Hague. In the view of the United States itself, as asserted in the Court of Federal Claims litigation, the plaintiffs were in the wrong forum. Knowing that, the government should have acted to bring its actions for damages from the breach of contract as compulsory counterclaims. Not having done so, the government is barred. I would affirm the judges of the two district courts.