**UNITED STATES of America, Plaintiff,**

v.

**HAMPTON TREE FARMS, INC., Defendant.**

**Civil No. 93–936–FR.**

United States District Court,
D. Oregon.

July 1, 1997.

Frank W. Hunger, Asst. Atty. Gen., Kristine Olson. U.S. Atty., Neil J. Evans, Asst. U.S. Atty., Portland, OR, John W. Showalter, Gerald M. Alexander, Dept. of Justice, Commercial Litigation Branch, Washington, D.C., for Plaintiff.

John P. Bledsoe, Charles J. Pruitt, Lane, Powell, Spears & Lubersky, Portland, OR, for Defendant.

## OPINION

FRYE, District Judge:

This action involves disputes over federal timber sale contracts entered into by the defendant, Hampton Tree Farms, Inc. (Hampton), with the plaintiff, the United States of America. The matters before the court are Hampton's motion for summary judgment (# 85) and the plaintiff's motion for summary judgment (# 89).

## UNDISPUTED FACTS

From October 18, 1978 through January 8, 1982, the United States Forest Service (the Forest Service) awarded Hampton eleven contracts to harvest timber in national forests within the State of Oregon. Hampton did not cut and remove the timber on or before the dates specified in the contracts. The Forest Service notified Hampton that the contracts were in default. All disputes relating to the contracts are subject to the Contract Disputes Act (CDA), 41 U.S.C. § 601–13.

Disputes involving contracts covered by the CDA are first submitted for a decision by a contracting officer. A party may appeal a decision of the contracting officer in two ways: (1) within ninety days to the Board of Contract Appeals of the Department of Agriculture; or (2) within twelve months to the United States Court of Federal Claims.

In 1983, the Forest Service promulgated a Multi–Sale Extension Policy (MSEP), which allowed a timber company five additional years to complete its contract or contracts in exchange for agreeing to request no further extensions and for agreeing to other contract modifications. Hampton did not submit a plan pursuant to the MSEP before February 15, 1984, the deadline set by the Forest Service for submitting the plan, because it was relying on an injunction issued in a class action, *North Side Lumber Co. v. Block* (D.Or.Civ. No. 83–490). The United States Court of Appeals for the Ninth Circuit vacated that injunction in *North Side Lumber Co. v. Block*, 753 F.2d 1482 (9th Cir.), *cert. denied*, 474 U.S. 931, 106 S.Ct. 265, 88 L.Ed.2d 271 (1985). After the ruling in *North Side Lumber*, many members of the plaintiff class in *North Side Lumber* settled with the government and were allowed to file MSEP plans at later dates as part of the settlement. Hampton, however, did not settle. The Forest Service rejected the MSEP plan filed by Hampton in May of 1985 as untimely.

In June of 1985, Hampton filed *Hampton Tree Farms. Inc. v. Block* (D.Or.Civ. No. 85–1085) (hereinafter known as *Yeutter*, a related case which was eventually consolidated with Civ. No. 85–1085), asking for a judicial declaration that it was entitled to have the original termination dates for the contracts extended as provided by the MSEP. When *Yeutter* was filed, none of the contracts had been declared in default.

When the government determined that Hampton's eleven contracts with the Forest Service were in default, it submitted them to contracting officers who issued final decisions between March 10, 1987 and May 31, 1988. *Yeutter* was still pending at that time. Within one year of the receipt of the decisions of the contracting officers, Hampton filed actions in the United States Court of Federal Claims contesting the eleven final decisions of the contracting officers. The United States Court of Federal Claims granted the motion of Hampton to stay the actions in order to await the district court's rulings in *Yeutter*.[1]

---

1. Although it is not crucial to the motions before this court, the United States Court of Appeals for the Ninth Circuit held in *Yeutter* that the timber companies could not rely on the injunction voided in *North Side Lumber* for the right to file MSEP plans later than the deadline set by the

On May 3, 1988, the government moved to dismiss Hampton's actions in the United States Court of Federal Claims on the grounds that 28 U.S.C. § 1500 deprived that court of jurisdiction. Section 1500 provides, in part, that "[t]he United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States." The government argued that the claims at issue in the United States Court of Federal Claims were based on the same operative facts as those in *Yeutter* and, thus, the United States Court of Federal Claims lacked jurisdiction. On July 14, 1993, the United States Court of Federal Claims dismissed Hampton's actions pursuant to section 1500.

On August 2, 1993, the government filed this action, entitled Complaint for Claim on a Debt. This court granted summary judgment to Hampton on the grounds of res judicata and the statute of limitations. The United States Court of Appeals for the Ninth Circuit reversed this court in the consolidated action, *United States v. Suntip Co.*, 82 F.3d 1468 (9th Cir.1996), *cert. denied,* — U.S. —, 117 S.Ct. 942, 136 L.Ed.2d 832 (1997). The court stated:

> The government asserts that, because we have ruled that its contracting officers' decisions may not be challenged on the merits in this proceeding, we must order summary judgment in favor of the government. Hampton and Suntip argue, however, that they have asserted defenses not going to the merits of the contracting officers' decisions. They have not explained what those defenses may be, and we leave it to the district court to determine whether such defenses may be asserted without reference to the merits of the contracting officers' decisions. If not, the government is entitled to judgment.

*Id.* at 1478. On remand, the parties have filed these cross-motions for summary judgment.

Forest Service, and that the Forest Service did not act arbitrarily or capriciously by approving late MSEP plans filed by plaintiff class members who settled, but refusing to approve late MSEP

## CONTENTIONS OF THE PARTIES

Hampton contends that the government is not entitled to reduce the decisions of the contracting officers to judgment because those decisions were vacated when Hampton timely filed suits in the United States Court of Federal Claims. Hampton further contends that the government is judicially estopped from taking the position that dismissal of the suits filed by Hampton in the United States Court of Federal Claims made final the decisions of the contracting officers. According to Hampton, it fully complied with the CDA and, thus, entry of judgment in favor of the government would deprive Hampton of property in violation of the Due Process Clause of the United States Constitution because Hampton has never had an opportunity to be heard on the merits of the government's claims.

The government contends that Hampton had an opportunity for a full hearing on the merits, but Hampton abrogated that right by proceeding in two different courts. The government further contends that the doctrine of judicial estoppel should not apply because the government has not taken inconsistent positions in the related actions. The government also contends that it is entitled to prejudgment interest.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue

plans filed by those who did not settle. *Hampton Tree Farms, Inc. v. Yeutter,* 956 F.2d 869 (9th Cir.), *cert. denied,* 506 U.S. 816, 113 S.Ct. 56, 121 L.Ed.2d 25 (1992).

of fact should be resolved against the moving party. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630–31 (9th Cir.1987).

## ANALYSIS AND RULING

### 1. *Finality of the Decisions of the Contracting Officers*

■ Hampton contends that the government has failed to state a claim because the decisions of the contracting officers were vacated when Hampton timely filed suits in the United States Court of Federal Claims as allowed in the CDA. Hampton alleged the following two related affirmative defenses in its Answer: (1) the CDA does not apply to claims of the government, in contrast to the claims of the contractor; and (2) Hampton's suits, which were timely filed pursuant to the CDA, prevent the decisions of the contracting officers from being conclusive.

Hampton does not cite any authority for its argument that the CDA does not apply to the claims alleged by the government. The statute states: "All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision. All claims by the government against a contractor relating to a contract shall be the subject of a decision by the contracting officer...." 41 U.S.C. § 605(a). In this action, the United States Court of Appeals for the Ninth Circuit stated that "[t]he government could not take legal action on its contract claims without first making them 'the subject of a decision by the contracting officer.'" *Suntip,* 82 F.3d at 1474 (quoting 41 U.S.C. § 605(a)). Hampton's affirmative defense has no merit; the CDA also applies to claims by the government.

■ Hampton next contends that its timely compliance with the CDA vacated the decision of the contracting officers when Hampton filed the actions in the United States Court of Federal Claims. The CDA states that "[t]he contracting officer's decision on the claim shall be final and conclusive and not subject to review by any forum, tribunal, or Government agency, unless an appeal or suit is timely commenced as authorized by

this chapter...." 41 U.S.C. § 605(b). It further states that "[a]ny action [filed in the United States Court of Federal Claims] shall be filed within twelve months ... and shall proceed de novo in accordance with the rules of the appropriate court." 41 U.S.C. § 609(a)(3). Hampton has cited cases which hold that the CDA does not change the rule that filing an appeal from the decision of the contracting officer vacates that officer's decision and allows a de novo hearing. *See Assurance Co. v. United States,* 813 F.2d 1202, 1206 (Fed.Cir.1987). The facts in these cases are distinguishable from the facts before this court, however, because these cases do not address the consequences of the contracting officer's decision if the appeal to the United States Court of Federal Claims is dismissed, as happened in this case. For example, the *Assurance* court made the cited statement when deciding if the contract appeals board had the authority to reduce, as opposed to increase, an award that the contracting officer made to the contractor. *Id.* The cases are not on point.

In this action, the United States Court of Appeals for the Ninth Circuit stated: "Indeed, the contracting officer's decision loses its finality when an action challenging it is filed in the Court of Federal Claims.... The officer's decision then becomes final only when the Court proceeding is concluded." *Suntip,* 82 F.3d at 1477 n. 11. In the case before this court, the United States Court of Federal Claims dismissed the actions. Thus, those proceedings have "concluded." This court holds that the decisions of the contracting officers are now final and may be enforced.

### 2. *Judicial Estoppel*

■ Hampton contends that the government should be judicially estopped from contending that the dismissal of the actions filed in the United States Court of Federal Claims made final the decisions of the contracting officers. Hampton contends that the government argued in the United States Court of Federal Claims that the United States District Court had subject matter jurisdiction to hear a challenge to the decisions of the contracting officers, but argued in the United

States District Court and in the United States Court of Appeals for the Ninth Circuit that neither had subject matter jurisdiction to do so.

The government notes that the statement made by the government attorney to the United States Court of Federal Claims on which Hampton relies was made during oral argument on the government's motion to dismiss. The judge immediately challenged the statement and noted that, under the CDA, a contracting officer's final decision cannot be challenged in a district court.

■ Judicial estoppel protects the integrity of the judicial process by preventing a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position. *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 600–01 (9th Cir.1996). The policies underlying the doctrine are the general consideration of the orderly administration of justice and regard for the dignity of judicial proceedings. Judicial estoppel, an equitable doctrine invoked in the discretion of a court, is "intended to protect against a litigant playing fast and loose with the courts." *Id.* at 601 (quotation omitted). What is termed the "majority view" holds that judicial estoppel is inapplicable unless the court actually adopted the first inconsistent statement. The "minority view" applies the doctrine even if the party was unsuccessful in asserting the inconsistent position, if his change of position shows that he is playing "fast and loose" with the court. The United States Court of Appeals for the Ninth Circuit has not decided whether to adopt the majority or minority view. *Id.*

The government's assertion of the position before the United States Court of Federal Claims was done orally in only a few sentences and was immediately rebuffed by the judge. The government attorney did not argue further. Thus, under the majority view, the court did not adopt the position of the government, and the doctrine of judicial estoppel does not apply. Even under the minority view, the government's assertion of the scope of the district court's jurisdiction was so minor that this court declines to apply the doctrine of judicial estoppel.

### 3. *Denial of Due Process*

■ Hampton contends that to enter judgment in favor of the government, when Hampton has not been heard on the merits of the government's claims and when Hampton has fully complied with the CDA, deprives it of property in violation of the Due Process Clause of the United States Constitution. The government contends that Hampton had every opportunity to be heard on the merits but chose a different tack during this protracted litigation.

It is undisputed that Hampton has never been heard in any forum on the merits of the government's claims. It is also undisputed that Hampton complied with the procedural requirements of the CDA when it filed timely actions there.

■ Due process requires that a party be given "an *opportunity* . . . granted at a meaningful time and in a meaningful manner for [a] hearing appropriate to the nature of the case." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 437, 102 S.Ct. 1148, 1159, 71 L.Ed.2d 265 (1982) (emphasis in the original) (citations and quotations omitted). Due process does not require that a party actually be heard, as long as it has had an opportunity to be heard. Here, Hampton had the opportunity to be heard on the merits of the government's claims in the United States Court of Federal Claims. Hampton's problem did not arise when it complied with the CDA. The problem arose when Hampton chose to litigate at the same time in a district court. Hampton could have proceeded simultaneously in both the district court and the board of contract appeals. That would have complied with both the CDA and 28 U.S.C. § 1500. Section 1500, however, does not allow simultaneous actions in the United States Court of Federal Claims and in another court. When Hampton chose to attempt to do that, it deprived the United States Court of Federal Claims of jurisdiction. Consequently, Hampton lost its opportunity to be heard on the merits. Because Hampton had the opportunity to be heard, it was not deprived of its federal due process rights.

**1360**

### 4. Other Affirmative Defenses

Hampton concedes that the remaining affirmative defenses, including its eighth defense of the right to judicial review under the Administrative Procedures Act, go to the merits of the claims of the government. According to the instructions from the United States Court of Appeals for the Ninth Circuit, this court may not address Hampton's remaining affirmative defenses.

### 5. Prejudgment Interest

■ The government contends that Hampton owes it prejudgment interest as a matter of right because the underlying claim is a contractual obligation to pay money. Alternatively, the government contends that Hampton owes it prejudgment interest to compensate the government for the loss of the use of its money while this litigation took place.

Hampton contends that the underlying claim is not a contractual obligation to pay money, but instead is an action to enforce the decisions of the contracting officers. Hampton further contends that it has several affirmative defenses that go to the merits of the decisions of the contracting officers, and that the government could have avoided its damages if it had acted reasonably by extending the time for Hampton to perform the timber contracts.

■ "[P]arties owing debts to the Federal Government must pay prejudgment interest where the underlying claim is a contractual obligation to pay money." *United States v. Texas*, 507 U.S. 529, 533, 113 S.Ct. 1631, 1634, 123 L.Ed.2d 245 (1993) (quotation omitted). Although the current action can be characterized as one to enforce decisions of contracting officers, see *Suntip*, 82 F.3d at 1476, the underlying claims are based upon contractual obligations to pay money, namely the timber sale contracts. Thus, the government is entitled to prejudgment interest to be calculated from the dates that those obligations were liquidated to specific amounts in the decisions of the contracting officers. A reasonable interest rate is the rate paid to contractors on claims made pursuant to the CDA, as specified in 41 U.S.C. § 611.

### CONCLUSION

Hampton's motion for summary judgment (# 85) is denied. The plaintiff's motion for summary judgment (# 89) is granted. The plaintiff shall submit an appropriate judgment, including an amount for prejudgment interest calculated as stated above, within twenty-one days of the date of this opinion.

### ORDER

IT IS HEREBY ORDERED that the defendant's motion for summary judgment (# 85) is DENIED, and the plaintiff's motion for summary judgment (# 89) is GRANTED. The plaintiff shall submit an appropriate judgment, including an amount for prejudgment interest calculated as stated in the opinion of this date, within twenty-one days of the date of this order.