976 So.2d 733 (2008)
William MCLEAN and Jeanne Dumestre
v.
DAVIE SHORING, INC.
No. 2007-CA-0162.
Court of Appeal of Louisiana, Fourth Circuit.
January 16, 2008.
*734 William E. Wright, Jr., Charlotte C. Meade, Deutsch, Kerrigan & Stiles, L.L.P. New Orleans, LA, for Plaintiffs/Appellants, William McLean and Jeanne Dumestre.
Kyle Schonekas, Andrea V. Timpa, Schonekas, Winsberg, Evans & McGoey, L.L.C., New Orleans, LA, for Appellee, Gregory C. Rigamer and Associates.
(Court composed of Judge JAMES F. McKAY, III, Judge DAVID S. GORBATY, Judge LEON A. CANNIZZARO, JR.).
LEON A. CANNIZZARO, JR., Judge.
The plaintiffs, William McLean and Jeanne Dumestre ("the McLeans")[1], appeal a trial court judgment dismissing their lawsuit with prejudice against the defendant, Gregory C. Rigamer & Associates, Inc. ("GCR"), on a peremptory exception of no right of action. We reverse the trial court judgment and remand the matter for further proceedings.

FACTS AND PROCEDURAL HISTORY
The McLeans owned and resided in a house at 4300 South Prieur Street in New Orleans, Louisiana. The property was located in an area designated for flood protection assistance through the Federal Emergency Management Agency ("FEMA") Unmet Needs Program; thus, the McLeans were eligible to apply for federal funds to partially pay for the elevation of their house. The City of New Orleans ("the City"), as the administrator of the FEMA program, entered into a contract with GCR, authorizing it to serve as the City's agent and administrator of the program. Pursuant to the contract, GCR was obligated to interview and recommend only insured and bonded elevation contractors to the participating property owners; insure that the required City permits were obtained prior to commencement of any elevation work; insure that the elevation contractor had used a licensed professional engineer to provide structural drawings for the new foundation system; insure that the elevation contractor documented the pre-construction condition of the house; insure that the elevation contractor disconnected and secured all utility services to the house; and submit monthly reports to the City tracking the progress of the construction work.
In connection with the McLeans' participation in the FEMA program, GCR retained Eustis Engineering Company, Inc. ("Eustis") to survey the property and recommend the appropriate foundation to be constructed in connection with the elevation of the house.
In July 2002, the McLeans entered into an elevation contract with Davie Shoring, Inc. ("Davie"), an elevation contractor selected by GCR. Pursuant to the contract, Davie was required to obtain the payment and performance bonds to insure completion of the work, to provide copies of the bonds to GCR prior to beginning the work, to obtain the necessary building permits and to pay the permit fees. Davie was also responsible for the new foundation design, including the preparation of design *735 drawings and specifications by a licensed professional engineer skilled in foundation design. The foundation was to consist of a deep interlocking piling system as recommended by Eustis. The estimated total cost of the contract was $144,500.00, 75% of which was to be paid through the FEMA program. The elevation contract also contained a hold harmless and indemnification clause, which provided:
Owner and Contractor hereby indemnify and hold harmless [GCR] from and against any and all claims, damages, demands, suits, judgments, losses, costs and liability, whether at law or in equity, in tort, contract or otherwise, directly or indirectly resulting in whole or in part from the acts or omissions of [GCR], its officers, directors, representatives, agents, servants, employees, or others for whom it may be responsible, in any way growing out of, or relating to, Owner's participation in the Federal Emergency Management Agency Unmet Needs Program, or any construction or other contract in connection therewith.
In conjunction with the elevation contract, the McLeans also executed a voluntary elevation agreement with GCR, which contained the following provision:
We [the McLeans] understand that any agreement with contractors for elevation and associated services will be between the owners of the structure and the contractor(s) and that the City of New Orleans and its agent, [GCR], will be held harmless from any claims, suits, loss or cost and liability on account of damages to the structure resulting from the negligence of contractors, its employees, agents and subcontractors.
GCR drafted both the elevation contract and the voluntary elevation agreement.
In late July 2002, Davie commenced the elevation work on the McLeans' house. Instead of providing plans and specifications prepared by a licensed professional engineer, as called for in the contract, Davie provided unstamped drawings without dimensions purportedly signed by a Mr. Michael A. Cenac. Additionally, Davie obtained a building permit for a "leveling and shoring" job with an estimated cost of $48,000.00, when, in fact, the job was far more complex and had an estimated cost of $144,500.00.[2] Davie also failed to obtain the payment and performance bonds as required under the contract.
Shortly after the work began, Davie sought to reduce the scope of its work under the original contract. As a result, the McLeans had to enter into two new contracts. The first was a new elevation contract with Davie, dated December 27, 2002, which excluded certain interior work that was part of the original contract. The new elevation contract had an estimated cost of $118,500.00 and did not require Davie to obtain payment and performance bonds.
The McLeans executed a second contract with Crescent City Construction ("Crescent City"), which was to perform certain construction services in coordination with Davie. Pursuant to the contract, Crescent City would be paid a total of $26,000.00, $19,500.00 from the grant funds and $6,500.00 by the McLeans.
Davie started the work under the new elevation contract in January 2003. Again, Davie neither provided plans and specifications by a licensed professional engineer nor obtained the proper building permits from the City. Nonetheless, Davie raised the house, drove the pilings and constructed *736 a new foundation. Soon after the work was completed in June 2003, the McLeans discovered that the walls of the house were out of plumb and the new foundation was placed twelve to eighteen inches out of line and not over the pilings installed by Davie.
The McLeans later met with Davie and Mr. Thomas M. Smith, an engineer retained by Davie in early 2003, to discuss the deficiencies in the work. The McLeans learned then, for the first time, that Mr. Smith had submitted several drawings in March 2003 that had modified the foundation plan previously submitted by Mr. Cenac. Neither Davie nor GCR had ever informed the McLeans of this fact.
To ascertain the full extent of the problem, the McLeans hired a licensed professional engineer, who determined that the house had shifted twelve to eighteen inches after Davie had raised it, that Davie had constructed a new support wall without taking into account the shift, and that the new foundation was not consistent with Mr. Smith's engineering design. The McLeans then hired a new contractor who agreed to raise the house, demolish the foundation constructed by Davie, and build a new foundation and support walls. While demolishing the foundation, the contractor discovered that Davie also had failed to drive the requisite number of pilings to the appropriate depths.
Although the McLeans applied to the FEMA program for funding to pay for the remediation of the deficient work and the construction of the new foundation, they were unable to obtain it. The new construction was nearly complete when the McLeans' neighborhood was flooded as a result of Hurricane Katrina on August 29, 2005. Nonetheless, the contractor completed the work and the McLeans were able to move back into their home in January 2006.
Meanwhile, the McLeans had sued Davie in February 2004, alleging breach of contract and negligence in the performance of its obligations under the elevation contract. The McLeans later amended their petition to name GCR as a defendant, alleging that it was negligent in failing to monitor and ensure that Davie completed its obligations under the elevation contract.
GCR filed a peremptory exception of no right of action, arguing that the elevation contract contained an unambiguous hold harmless and indemnification clause whereby the McLeans unequivocally agreed to indemnify and hold GCR harmless from and against any and all claims or damages arising under the contract or for their participation in the FEMA Unmet Needs program, including liability arising from "the acts or omissions" of GCR. In addition, GCR argued, the voluntary elevation agreement released it from any and all claims for damage to the McLeans' property as a result of the elevation work. In support of its exception, GCR submitted copies of both the signed elevation contract and voluntary elevation agreement.
The McLeans, in opposition to the exception, argued that to the extent the indemnity and hold harmless provisions limited or excluded, in advance, GCR from any and all liability for its own gross negligence or intentional conduct, they were null and void and against public policy pursuant to article 2004 of the Louisiana Civil Code.[3] The McLeans emphasized that GCR, as the project administrator for the City, drafted the elevation contract and the voluntary elevation agreement, and *737 they were required to accept the contracts as written to participate in the FEMA program. Thus, they argued, the contractual provisions should have been strictly construed against GCR.
Following a hearing, the trial court sustained the exception, dismissing the McLeans' claims against GCR with prejudice. The McLeans appealed.

ASSIGNMENTS OF ERROR
The McLeans raise three assignments of error which, essentially, may be summarized as the trial court erred in sustaining GCR's peremptory exception of no right of action.

STANDARD OF REVIEW
The determination of whether a plaintiff has a right of action is a question of law. Therefore, this court is required to determine whether the trial court applied the law appropriately. Mendonca v. Tidewater, Inc., XXXX-XXXX, p. 4 (La.App. 4 Cir. 12/17/03), 862 So.2d 505, 508. In Glass v. Alton Ochsner Medical Foundation, XXXX-XXXX (La.App. 4 Cir. 11/6/02), 832 So.2d 403, this court set forth the scope of appellate review concerning issues of law:
The standard of review of appellate courts in reviewing a question of law is simply whether the court's interpretative decision is legally correct. Phoenix Assur. Co. v. Shell Oil Co., 611 So.2d 709, 712 (La.App. 4 Cir.1992). Furthermore, if the decision of the district court is based on an erroneous application of law rather than on a valid exercise of discretion, the decision is not entitled to deference by the reviewing court. Kem Search, Inc. v. Sheffield, 434 So.2d 1067, 1071-1072 (La.1983).
XXXX-XXXX, p. 3, 832 So.2d at 405.

LAW AND DISCUSSION
La. C.C.P. art. 923 states that "[t]he function of the peremptory exception is to have the plaintiff's action declared legally nonexistent, or barred by effect of law, and hence this exception tends to dismiss or defeat the action." La. C.C.P. art. 927 lists the objections that may be raised through a peremptory exception, and "[n]o right of action, or no interest in the plaintiff to institute the suit" is one of the objections that is listed. La. C.C.P. art. 927(A)(5).
Pursuant to La. C.C.P. art. 681, an action can be brought only by a person having a real and actual interest in that which he asserts. The function of the exception of no right of action is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit. La. C.C.P. art. 927; Reese v. Department of Public Safety and Corrections, XXXX-XXXX, p. 3 (La.2/20/04), 866 So.2d 244, 246. The focus in an exception of no right of action is on whether the particular plaintiff has a right to bring the suit, but it assumes that the petition states a valid cause of action for some person and questions whether the plaintiff in the particular case is a member of the class that has a legal interest in the subject matter of the litigation. Id. Further, evidence is admissible on the trial of an exception of no right of action to "support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition." La. C.C.P. art. 931.
In reviewing the judgment sustaining the exception of no right of action, we assume the McLeans' petition states a valid cause of action. Furthermore, it is undisputed that the McLeans are the owners of 4300 South Prieur Street and that they had participated in the FEMA program administered by the City through GCR. Thus, considering these circumstances, we find that the McLeans have a real and *738 actual interest in the matter that has been asserted, belong to the class of persons to whom the law grants the cause of action asserted, and are the proper parties to bring the suit at issue. Because the McLeans clearly have a legal interest in the subject matter of this litigation, we conclude that the trial court erred in sustaining the peremptory exception of no right of action raised by GCR.
Finally, we note that much of the argument in both the trial court and the appeal was directed to the issue of whether GCR's conduct, as alleged by the McLeans, constituted ordinary or gross negligence or intentional fault. Considering the focus of our review of the exception of no right of action was limited solely to the issue of whether the McLeans were the proper parties, i.e., had standing, to bring the suit against GCR, we pretermitted any discussion regarding GCR's conduct and/or the actual merit of the McLeans' claims as it was not germane to that issue.

DECREE
Accordingly, for the above reasons, the judgment of the trial court is reversed and the matter is remanded for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] The record indicates the plaintiffs were married. Therefore, for ease of reference, we will refer to them as the McLeans.
[2] The McLeans allege that Davie misrepresented the scope of the elevation contract in order to avoid the more stringent requirements for projects with costs greater than $50,000.00 and to limit the amount of permit fees.
[3] La. C.C.P. art. 2004 provides, in pertinent part, that "[a]ny clause is null that, in advance, excludes or limits the liability of one party for intentional or gross fault that causes damage to the other."